SANGAMO CONSTRUCTION COMPANY, Petitioner, *v.* THE POLLUTION CONTROL BOARD *et al.,* Respondents.

(No. 12094; 

Fourth District—May 1, 1975.

James T. Mohan, of Springfield, for petitioner.

William J. Scott, Attorney General, of Springfield (Larry R. Eaton and Thomas A. Cengel, Assistant Attorneys General, of counsel), for respondents.

Mr. PRESIDING JUSTICE SIMKINS delivered the opinion of the court:

This is a petition by Sangamo Construction Company (Sangamo) for review of an order of the Illinois Pollution Control Board (Board). The

Board found that Sangamo had caused air pollution in violation of section 9(a) of the Environmental Protection Act. (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a).) The Board further found Sangamo had violated section 3—2.110 of the rules and regulations of the Air Pollution Control Board by failing to secure a permit for its concrete plant. Also, the Board found Sangamo had operated its asphalt plant without a permit. A $5000 fine was imposed for these three violations. Sangamo appeals to this court pursuant to the provisions of the Environmental Protection Act and the Administrative Review Act. Ill. Rev. Stat. 1971, ch. 111½, par. 1041; Ill. Rev. Stat. 1971, ch. 110, par. 264 *et seq.*

Three issues are raised for review: (1) Whether Sangamo operated its asphalt plant without a permit; (2) whether the finding that Sangamo had caused air pollution is against the manifest weight of the evidence; and (3) whether the fine imposed is arbitrary and excessive.

In 1969, Sangamo applied for an installation and operation permit for its asphalt plant near Springfield, Illinois. Such a permit was required by the rules and regulations of the Air Pollution Control Board, predecessor agency to the Pollution Control Board, and to the Environmental Protection Agency. The permit was issued by the Air Pollution Control Board early in 1969.

On May 10, 1972, the Environmental Protection Agency filed a complaint with the Board, charging, among other things, that Sangamo had been operating its asphalt plant in violation of its permit. The Board subsequently held that because of Sangamo's actions, the company was operating without an applicable permit.

In the application for a permit, various information was requested in order to determine the environmental impact of the plant. One of the items requested was the process weight rate of the proposed equipment. The process weight rate is the total amount of materials used in the operation over a given period of time. The amount of allowable emissions is calculated as a proportion of this rate.

Sangamo indicated a rate of 200 tons per hour on this form. The application form does not indicate whether the figure to be supplied was to be an average or maximum figure, whether it was to be measured or estimated. After the application form was received, Sangamo was issued a permit.

During the period covered by the complaint, from July 1970 through May 1972, the actual process weight rate at which the plant was operated ranged from a low of 115 tons per hour to a high of 327. The average operating rate was 247 tons per hour.

The Board's opinion states that this was as if two plants had been

built by Sangamo instead of one. They found that the permit did not authorize such rates and therefore Sangamo was operating without a permit.

We cannot agree with the Board's decision. First, the application form, supplied to Sangamo by the Air Pollution Control Board, gave the applicant no indication that an estimated average rate was not acceptable. Sangamo contends that the figure supplied was a reasonable anticipated average rate for this new plant. The Environmental Protection Agency does not dispute that, but argued that an actual maximum rate was required to be given. For the Board to retroactively interpret this ambiguous form to find a violation is clearly unfair to Sangamo. In other parts of the form, estimated figures were permissible. If estimated average figures of the process weight rate were not acceptable, it would have been extremely simple to indicate this on the form.

■■ Even more importantly, the permit does not specifically incorporate the application. The permit which was granted allowed Sangamo to install and operate a certain model asphalt plant with specifically described pollution-control equipment. The permit contains no limitations on the rate of material that could be processed by this equipment.

Sangamo had a permit and it contained no restrictions as to the rate. Therefore, we cannot agree with the Board's findings that the company was operating without a permit for its asphalt plant.

The Board also found that Sangamo had violated section 9(a) of the Environmental Protection Act. (Ill. Rev. Stat. 1971, ch. 111½, par. 1009(a).) Section 9(a) reads in part:

"No person shall: (a) Cause or threaten or allow the discharge or emission of any contaminant into the environment * * * so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources * * *."

Section 3(b) of the Act defines "air pollution":

"(b) 'Air Pollution' is the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to property, or to unreasonably interfere with the enjoyment of life or property." Ill. Rev. Stat. 1971, ch. 111½, par. 1003(b).

■ Sangamo contends that the finding by the Board of a section 9(a) violation is against the manifest weight of the evidence. This court may overturn the decision of an administrative agency on review only if we find that the decision was against the manifest weight of the evidence. (*City of Monmouth v. Pollution Control Board*, 57 Ill.2d 482, 313 N.E.2d 161; *Incinerator, Inc. v. Pollution Control Board*, 59 Ill.2d 290, 319 N.E.2d

794.) The findings of the Pollution Control Board are deemed to be prima facie true, and "there need only be some competent evidence in the record sufficient to support the agency finding." *Cobin v. Pollution Control Board*, 16 Ill.App.3d 958, 969, 307 N.E.2d 191, 199.

The Environmental Protection Agency introduced the testimony of several businessmen who worked near Sangamo's plant. This testimony concerned both the odor and dust problem alleged in the agency's complaint to be a section 9(a) violation. We will summarize that evidence.

One businessman testified that, because of the odor produced by Sangamo's operations, he permitted office girls to go home on several occasions. He said that he himself was sometimes close to nausea. Another businessman testified that because of the odor he was forced to close the overhead doors of his plant which faced in Sangamo's direction. This led to employee complaints about lack of ventilation. The attribution by the witnesses of these odors to Sangamo was clear. One witness said that he could distinguish the asphalt odors produced by Sangamo from an occasional odor produced by oil spills from a nearby oil-storage tank. All of the witnesses agreed that there was no odor when Sangamo was not in operation and that the smell was most objectionable when the wind was blowing from Sangamo's direction.

There was also specific testimony about the dust problem. The owner of a nearby furniture moving and storage company stated that, because of the dust, he was forced to clean furniture before redelivering it. Another businessman testified that the dust made office maintenance and repair work difficult, especially when repainting equipment. Again, the attribution by the witnesses of this dust to Sangamo was clear. A direct connection was noted between wind direction and the dust. In addition, the witnesses observed specific operations at Sangamo which seemed to create the most dust.

The legislature has defined two types of "air pollution" in section 3(b) of the Act. One is the presence of contaminants in the atmosphere in sufficient amounts, characteristics and duration as to unreasonably interfere with the enjoyment of life or property. In *Incinerator, Inc.*, the Illinois Supreme Court has specifically said that, before the Board can determine that a section 9(a) violation exists because of this type of air pollution, the Board must consider certain criteria established in section 33(c) of the Act. Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c).

■■ Another type of "air pollution" defined in 3(b) is the presence of contaminants injurious to human, plant or animal life, to health or property. We believe that section 33(c) factors must also be considered before a violation of this type can be found. The reasoning of the supreme court in *Incinerator, Inc.* is fully applicable to both types of air pollution. The

purpose of section 33(c) is to provide protection against arbitrariness by the Board and to present the Board with guidelines in determining what is a violation. (*City of Waukegan v. Pollution Control Board,* 57 Ill.2d 170, 311 N.E.2d 146.) The language of 33(c) makes no distinction between these two types of air pollution but directs:

> "(c) In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:
>
> (i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;
>
> (ii) the social and economic value of the pollution source;
>
> (iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved; and
>
> (iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source." Ill. Rev. Stat. 1971, ch. 111½, par. 1033(c).

Furthermore, the Board must indicate that it has taken these factors into consideration by stating the facts and reasons for its decision in a written opinion as provided in section 33(a) of the Act. Ill. Rev. Stat. 1971, ch. 111½, par. 1033(a); *Incinerator, Inc.*

In order to make a valid determination that a violation has been committed in a specific instance, an unfavorable finding as to each 33(c) factor is not necessary. This is evidenced from the opinion in *City of Monmouth.* There the supreme court held that the city had properly been found to have caused air pollution although no technologically feasible method existed to prevent the odor problem which formed the basis of the violation.

Evidence was introduced in this case as to each of the 33(c) factors. The evidence relating to injury or unreasonable interference with health and property has been summarized above. The social and economic value of the pollution source was also considered by the Board. In its opinion, the Board pointed out that neither the asphalt plant nor the concrete plant was in operation and, at least insofar as the asphalt plant was concerned, Sangamo did not intend to reopen the plant. The suitability of the pollution source to its location was also specifically considered by the Board. The fact that no residences were affected and that the exposure to the odor and dust was on an occupational basis was found by the Board to be a mitigating factor. In regard to the fourth factor, technical feasibility

of reducing emissions, the Board found Sangamo had installed devices to reduce emissions over a period of several years (the last in the spring of 1972), but that such actions should have been taken when the plant was first erected. This was discussed by the Board in its determination of permit violations, but it is applicable to the 9(a) violation and shows that the Board considered the evidence on this issue.

It therefore appears that the evidence as to the 33(c) criteria was considered by the Board.

The Board has a duty to make specific findings as to these criteria in its opinion. We think that the statements of the supreme court in regard to the Board's opinion in the *Incinerator, Inc.* case are appropriate here.

> "We are inclined to agree with appellant that the Board was not as specific as it might have been in making written findings as to each of the section 33(c) criteria. However, there was substantial compliance with the Act, and in view of all the evidence and the fact that the Board appears to have properly determined the issue of reasonableness in light of the section 33(c) factors, we do not deem it necessary to remand the cause for further findings." 59 Ill.2d 290, 299, 319 N.E.2d 794, 798.

■■■ We hold that the finding of a section 9(a) violation is not against the manifest weight of the evidence. Competent testimony was introduced as to the extent of the odor and dust problems and Sangamo's responsibility for them. (The fact that proof of the violation is based upon the testimony of private businessmen, rather than technical experts, does not mean it is insufficient to sustain a conviction. In a recent case, we have held that nothing in the Environmental Protection Act indicates "public witnesses" are less credible than any other witnesses. (*Ralston Purina Co. v. Pollution Control Board,* 27 Ill.App.3d 53, 58, 325 N.E.2d 727.) This is true here since the violation alleged is not a technical one such as exceeding particulate-emission standards.)

Sangamo had introduced testimony that there were other dust-producing causes in the neighborhood, including many unpaved roads and agricultural activities. The Board carefully considered this evidence in its opinion, but found that Sangamo had itself produced dust and odor. In view of the testimony of the witnesses, we cannot find that this was against the manifest weight of the evidence.

Sangamo has argued that the $5000 fine imposed was arbitrary and excessive. The Board is vested with broad discretionary powers in its imposition of civil penalties. (Ill. Rev. Stat. 1971, ch. 111½, par. 1042.) However, whether the fine imposed is arbitrary and excessive is subject to judicial review. *City of Monmouth; Incinerator, Inc.*

Sangamo has charged that the Board imposed the fine, at least in

part, for a violation not alleged in the complaint and that this is arbitrary and unfair.

The Environmental Protection Agency introduced considerable testimony to the effect that the asphalt plant exceeded the particulate-emission standards of Rule 3—3.11 of the rules and regulations governing the control of air pollution. The Board discussed this testimony and found that Sangamo apparently had committed the violation. However, the Board expressly stated that no penalty would be imposed since it would be unfair to impose a fine for a violation not alleged in the complaint.

The fact that the Board discussed this testimony in no way shows that it entered into its consideration of the amount of the penalty, especially in the face of its express statement that it would not do so. The Board had ample reason to discuss this issue: First, because of its duty to remonstrate with the Environmental Protection Agency for its attempt to prove a violation not charged in the complaint; and second, because asphalt plants are movable, to warn that a permit for this particular plant would not be granted for another location unless compliance with the emission standards can be shown by Sangamo.

■■ The Board imposed one $5000 fine for three violations. These were the 9(a) violation, the permit violation for the asphalt plant, and the permit violation for the concrete plant. Sangamo does not deny that its concrete plant operated without a required permit for 2½ years. Also, we have found that the Board properly decided that Sangamo had committed a 9(a) violation. However, in view of the fact that we have decided that there was no permit violation in the operation of the asphalt plant, we reverse that portion of the Board's order imposing the $5000 fine and remand for reimposition of fines on the 9(a) and concrete-plant-permit violations. *Allied Metal Co. v. Pollution Control Board*, 22 Ill.App.3d 823, 318 N.E.2d 257.

For the reasons stated, the judgment of the Pollution Control Board is affirmed in part and reversed in part, and the portion of the order of the Board which imposed the fine is reversed and the cause is remanded to the Pollution Control Board for further proceedings consistent with this opinion.

Affirmed in part, reversed in part, and remanded with directions.

TRAPP and GREEN, JJ., concur.