W. DAKIN WILLIAMS, Petitioner-Appellee, *v.* DOUGLAS L. BUTLER *et al.*, Respondents-Appellants.

Fourth District No. 76-10

Opinion filed January 30, 1976.

Londrigan & Potter, P. C., and Michael Levinson, of State Board of Elections, both of Springfield (Thomas F. Londrigan, of counsel), for appellants.

W. Dakin Williams, *pro se.*

Mr. JUSTICE CRAVEN delivered the opinion of the court:

This proceeding was instituted on December 20, 1975, when Douglas Butler filed objections to the petitions of W. Dakin Williams contending that the petitions were not sufficient for Williams to be a candidate of the Democratic Party in the March 1976 primary election. Williams sought to be a candidate of the Democratic Party for the office of governor. The State Board of Elections, after a hearing, sustained certain of the objections. The consequence of the action of the State Board was to exclude Williams as a candidate.

Upon judicial review, pursuant to the provisions of section 10—10 of the Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 10—10), the circuit court of Sangamon County affirmed in part and reversed in part the order of the State Board of Elections. The effect of the trial court order insofar as it reversed certain action of the State Board was to find that there were sufficient valid signatures on nominating petitions so as to entitle Williams to be a candidate of the Democratic Party for the office of governor. The trial court judgment ordered that the State Board certify Williams' name to the appropriate officials for placement upon the ballot for the election to be held on March 16, 1976. Upon appeal to this court, and upon a motion for stay and an expeditious hearing, this court ordered a stay of the trial court judgment and further entered an order reversing that judgment. The order of this court was entered January 15, 1976. In announcing our order, we indicated an opinion would subsequently be filed. This is that opinion.

The objections originally filed with the State Board contended that the nominating petitions filed by Williams were invalid upon six specified grounds. The State Board disallowed four of these grounds, three having been stricken by the Board and one having been overruled by the Board. The Board, however, did sustain two objections. Those objections alleged:

"(c) For the reasons set forth in subparagraphs (a) and (b) the petitions purportedly circulated on behalf of Mr. Williams, and in particular those circulated by Ron Galbraith (pages 72-77, 96, 99, 100-102, 106-109, 117-124, 132, 134, 136-139, 143-144, 148-149, 186, 190, 196-197, 202-203, 206, 215-217, 225, 228-232, 235, 237, 239-241, 245, 247-249, 261-263), Michael Singer (pages 3, 90-95,

97-98, 103, 104-105, 110-116, 125-128, 130-131, 133, 135, 140-142, 145-147, 150-177, 180-182, 185, 187-189, 192-195, 198-199, 200-201, 204-205, 207-214, 218-224, 226-227, 233-234, 236, 238, 240-244, 246, 250-260, 264), and Gordon Haymon (pages 4-71, 78-89, 265-275 and 277-282), and purporting to bear signatures of qualified primary electors in fact do not bear such signatures. Such petitions contained forged signatures. The attestations are false and fraudulent. Therefore said petition sheets are void and should be stricken in their entirety.

\* \* \*

(f) Petitioner states page 191 of the petition of W. Dakin Williams is missing. Therefore all pages numbered 192 through 323 fail to meet the statuatory [sic] requirment [sic] that all sheets 'be. numbered consecutively', (Election Code, section 7—10). Therefore all the sheets numbered 192 through 323 should be striken [sic] from the petition of W. Dakin Williams for failure to meet that statuatory [sic] requirement."

The substantive effect of the trial court order was to find that objection (c) above set forth should have been sustained only insofar as the objection related to the petitions circulated by one Gordon Haymon, and that in other respects the objections should have been overruled.

■■■ As to objection (f), the trial court held as a matter of law that the statutory requirement that the pages of the nominating petition be consecutively numbered was not an appropriate basis for striking all pages and all signatures after page 191 of the Williams' petition. The pages of Williams' petition were numbered 1 through 323, but there is no page 191. We agree with the trial court that such omission does not constitute any basis for striking the remaining pages. The statutory requirement found in section 7—10 of the Election Code (Ill. Rev. Stat. 1973, ch. 46, par. 7—10) that the pages be numbered consecutively cannot be said in any way to relate to preservation of the integrity of the electoral process. Noncompliance with the provision in the failure to insert or number a page is a mere technicality and cannot invalidate a petition. It seems to us irrelevant whether we would conclude that there was at least substantial compliance as in *Madison v. Sims*, 6 Ill.App.3d 795, 286 N.E.2d 592, or whether we construe the statutory requirement as merely directory and noncompliance is of no legal consequence.

The record before the State Board of Elections as it relates to objection (c) indicates that 9 individuals circulated some 323 pages of the petitions obtaining signatures thereon. Pages containing some 6000 names were circulated by the 3 persons named in paragraph (c) of the

536

■■ .We view the statutory requirement that circulators of petitions sign a statement before an officer authorized to administer oaths to the effect that they circulated the petition and that the signatures were signed in their presence and are genuine to be a substantial and valid requirement that relates to the integrity of the political process. We are not unmindful of the fact that access to a place on the ballot is a substantial right not lightly to be denied. The exercise of that right should not be impeded by unreasonable, frivolous or unnecessarily limiting requirements. (See *Jenness v. Fortson*, 403 U.S. 431, 29 L.Ed.2d 554, 91 S.Ct. 1970; *Lubin v. Panish*, 415 U.S. 709, 39 L.Ed.2d 702, 94 S.Ct. 1315.) In *American Party of Texas v. White*, 415 U.S. 767, 39 L.Ed.2d 744, 94 S.Ct. 1296, *rehearing denied*, 416 U.S. 1000, 40 L.Ed.2d 777, 94 S.Ct. 2414, the United States Supreme Court, in another context, discussed impermissible burdens on the right to associate for political purposes. In the course of its opinion, the Court did discuss a statutory requirement for notarization. Upon the record then before it, the Court found that such a requirement did not appear to be impracticable nor unduly burdensome.

In this case, there was a contention that certain of the signatures on the various petitions were forgeries; that some of the signatures had been signed by the same person; and that some of the signatures were written in such a way as to indicate an effort to disguise the handwriting. While we deem it unnecessary to pass upon the merits of this issue, the evidence on the issue is far from adequate.

■■■ We note that the statutory requirement that the circulator of the petition certify that he did circulate the petition and that the signatures were placed thereon in his presence and that they were genuine and that by his sworn statement he would subject himself to possible perjury prosecution, is a meaningful and realistic requirement designed to eliminate fraudulent signatures or perhaps a signing of large numbers of names to petitions by a few people. The notary public in this case, Joan Tosi, testified that she placed her notary seal and signature on each of the petitions; that she did this on the same date; and that the petitions were brought to her by Williams at various times; and that she notarized them at the same time. The witness said that each of the individuals indicated as circulators did not sign and appear before her and acknowledge that all of the persons whose names were signed to the petitions were qualified voters of the Democratic Party. Upon cross-examination, she stated she could not recall whether Singer, Galbraith or Haymon appeared before her. Haymon testified that he did not appear before her. Skidmore testified that he collected the petitions from Haymon, Galbraith and Singer, and gave them to Williams. Upon that record, the

objections, *i.e.*, Ron Galbraith, Gordon Haymon and Michael Singer. The objector, Douglas Butler, attempted to contact some of the circulators at the address indicated on the petition. He was unable to contact Michael Singer at his indicated address or Ron Galbraith at the same indicated address. He did find Michael Singer's stepmother at that address. The objector did contact one Jack Skidmore. Skidmore advised him that he had been involved in getting signatures on nominating petitions for Williams. Skidmore had placed an ad in a newspaper seeking persons to circulate petitions. He secured the 3 named persons to circulate the petitions and he paid them a fee for the service. Skidmore periodically met them at a gas station to collect the petitions. At the time he collected the petitions, the petitions had already been signed by the circulators. Skidmore was called as a witness and in his testimony he indicated his general concurrence in the testimony of Butler as related above, and added that when the petitions were collected by him, they were completed in form and he would give them to Williams and he [Williams] "would get them notarized, and I informed the boys to go by the office and witness their signatures. Whether they did or not, I have no knowledge."

Gordon Haymon called as a witness stated that he circulated petitions on behalf of Williams; that he signed his name to the petitions but not in the presence of a notary public. He signed the petitions and gave them to Skidmore. The substance of his testimony is that he did not sign the acknowledgment before the notary public.

All the petitions signed by the 3 circulators bear the acknowledgment of Joan Tosi as a notary public and for the most part bear a notarization date of October 15, 1975. Galbraith and Singer were not called as witnesses. Section 10—4 of the Code (Ill. Rev. Stat. 1973, ch. 46, par. 10—4) requires that at the bottom of each petition there shall be a statement signed by the circulator certifying that the signatures on that sheet were signed in his presence and that they are genuine and further that the signers were qualified voters of the political division for which the candidate is being nominated. This statutory provision expressly requires that this statement by the circulators "shall be sworn to before some officer authorized to administer oaths in this State." The court found that there was noncompliance with this provision as to Haymon and concluded that the petitions circulated by him were invalid. The trial court further concluded that the finding by the State Board that there was noncompliance with this provision insofar as Singer and Galbraith were concerned was contrary to the manifest weight of the evidence. In our view, the finding of the State Board of Elections upon this issue is not against the manifest weight of the evidence.

State Board of Elections could find that Haymon, Singer and Galbraith did not appear before her and acknowledge to the circulator's statement as required by statute.

■■ The Election Code provides for judicial review for decisions of the electoral board (Ill. Rev. Stat. 1973, ch. 46, par. 10—10.1). Such review is not intended to provide a de novo hearing but merely to provide by judicial review a remedy against arbitrary or unsupported decisions. (*Wiseman v. Elward*, 5 Ill.App.3d 249, 283 N.E.2d 282.) The statutory procedure provided in the Election Code is not expressly the same as the procedure provided in the Administrative Review Act (Ill. Rev. Stat. 1973, ch. 110, par. 264 *et seq.*). It is substantially the same, however, and the decisions under the Administrative Review Act to the effect that the findings of an administrative agency will not be reversed or set aside unless they are against the manifest weight of the evidence would clearly have application to this proceeding. In *Sangamo Construction Co. v. Pollution Control Board*, 27 Ill.App.3d 949, 328 N.E.2d 571, the well-established rule was stated to be as follows:

> "This court may overturn the decision of an administrative agency on review only if we find that the decision was against the manifest weight of the evidence. (*City of Monmouth v. Pollution Control Board*, 57 Ill.2d 482, 313 N.E.2d 161; *Incinerator, Inc. v. Pollution Control Board*, 59 Ill.2d 290, 319 N.E.2d 794.) The findings of the Pollution Control Board are deemed to be prima facie true and 'there need only be some competent evidence in the record sufficient to support the agency finding.' *Cobin v. Pollution Control Board*, 16 Ill.App.3d 958, 969, 307 N.E.2d 191, 199." 27 Ill.App.3d 949, 952, 953, 328 N.E.2d 571, 574.

■■ We conclude that that statutory provision is a reasonable regulation designed to preserve the integrity of the electoral process and noncompliance with it constitutes a valid objection. When the petitions circulated by the 3 named persons are eliminated, there are not sufficient signatures for W. Dakin Williams to have his name appear on the primary ballot.

■■ Williams has filed a purported notice of cross-appeal, and he urges that the State Board of Elections was without jurisdiction to entertain the objections. Section 10—10 of the Code provides that upon objections being filed, the State Board of Elections shall have a meeting to determine the validity of the objections. The meeting is required to be held not less than three nor more than five days after the receipt of the objections by the chairman of the electoral board. In this case, the record indicates that the objections were received by the chairman of the electoral board on the 22nd of December 1975—the fifth day, or the last day, for the meeting was a Sunday, the 28th of December. A meeting

was scheduled for the 29th; only two of the four members of the State Board of Elections were able to be present on the 29th because of a winter storm. The meeting was adjourned from the 29th to the 30th. The record does not indicate an objection to such an adjournment by the petitioner. The hearing was held on the 30th. We agree with the trial court that there is no merit to Williams' objection to the jurisdiction of the Board. We find no merit in the contention that relief granted was not within the scope of the pleadings. The objections specifically alleged that the attestations were false and fraudulent.

For the reasons stated, the judgment of the circuit court of Sangamon County is reversed and this cause is remanded to that court with directions to enter a judgment affirming the order of the State Board of Elections.

Reversed and remanded with directions.

TRAPP, P. J., and GREEN, J., concur.