WILLIAM J. BOWE, Petitioner-Appellant, *v.* THE CITY OF CHICAGO ELECTORAL BOARD *et al.*, Respondents-Appellees.

First District (3rd Division)    No. 80-370

Opinion filed February 29, 1980.

McGILLICUDDY, J., dissenting.

Charles M. Biggam, Jr., David W. Andich, and Anthony B. Eben, Jr., all of Chicago (Biggam, Cowan & Lunding, of counsel), for appellant.

Andrew M. Raucci and Michael P. McClelland, both of Chicago, for appellee Timothy J. Fitzgerald.

Michael L. Levinson, of Chicago, for other appellees.

Mr. JUSTICE McNAMARA delivered the opinion of the court:

Petitioner, William J. Bowe, appeals from an order of the circuit court of Cook County which excluded him from placement on the ballot as a candidate for Democratic ward committeeman of the 43d ward of the city of Chicago in the primary election to be held on March 18, 1980. The order affirmed the decision of respondent city of Chicago electoral board sustaining certain objections filed by respondent Thomas J. Fitzgerald to petitioner's nominating petition.

To appear on the ballot as a candidate for ward committeeman, petitioner was required to submit a minimum of 1,295 signatures on his nominating petition, representing 10% of the qualified primary electors in the ward. (Ill. Rev. Stat. 1977, ch. 46, par. 7—10(i).) On December 17, 1979, petitioner filed 1,663 signatures. Fitzgerald filed objections alleging several irregularities in the nominating petition. At a hearing on these objections, the electoral board sustained objections to 359 signatures. This came after an examination of the precinct binder cards revealed that signers were not registered or did not reside in the ward. Petitioner

withdrew a nominating sheet containing seven signatures which had been circulated by a person who allegedly had not appeared before a notary public.

Fitzgerald also objected to 37 signatures on the sole ground that Robert Hernquist, the circulator of the two nominating sheets containing those signatures, did not appear personally before the notary public who notarized the documents.

Hernquist testified that on the evening of December 9, 1979, he brought the sheets he had circulated to petitioner's campaign head-quarters. There he signed the certification at the bottom of sheets 19 and 20, and handed them to a campaign worker with whom he was acquainted. During cross-examination, Hernquist stated that he read the certification statement before he signed and that he considered himself under oath at the time. James Karpiak, a notary public, testified that on December 9, he was present at petitioner's campaign headquarters from approximately 10 a.m. to 11 p.m. He did not recall whether he was present when Hernquist signed the nominating sheets. Karpiak indicated that he was familiar with and recognized Hernquist's signature when, on December 9, 1979, he notarized Hernquist's signature.

After considering the testimony and arguments of counsel, the electoral board sustained Fitzgerald's objections. It held that the circulator failed to appear before the notary public and therefore did not comply with section 7—10 of the Election Code. (Ill. Rev. Stat. 1977, ch. 46, par. 7—10.) Accordingly, the 37 signatures on sheets 19 and 20 were invalidated, thereby reducing the number of valid signatures to 1,260. Finding that the number of valid signatures on the nominating petition fell below the requisite statutory minimum, the electoral board ruled that petitioner's name would not be printed on the ballot for the primary election.

Petitioner sought judicial review in the circuit court of Cook County asking for reversal of the electoral board's ruling (Ill. Rev. Stat. 1977, ch. 46, par. 10—10.1). On February 1, 1980, the trial court affirmed the decision of the electoral board. After the Illinois Supreme Court denied petitioner's motion for direct appeal, this court allowed an expedited appeal.

Petitioner also filed suit in the United States District Court challenging the constitutionality of the minimum signature requirement for the office of ward committeeman as compared to the minimum requirement for other offices, and seeking preliminary injunctive relief requiring the electoral board to include his name on the ballot. The District Court denied preliminary injunctive relief prior to a hearing on the merits and, on February 13, 1980, the United States Court of Appeals

affirmed that denial. Bowe v. Election Commissioners of City of Chicago (7th Cir. 1980, No. 80-1129).

■■ The sole issue presented on appeal is whether signatures on a nominating petition should be invalidated and petitioner should be disqualified from a ballot position because the circulator failed to appear personally before the notary public. The statute, which prescribes the necessary elements of a nominating petition, provides in relevant part:

> "At the bottom of each sheet of such petition shall be added a statement signed by an adult resident of the political division for which the candidate is seeking a nomination, stating his residence address * * *, certifying that the signatures on that sheet of the petition were signed in his presence, and are genuine, and that to the best of his knowledge and belief the persons so signing were at the time of signing the petitions qualified voters of the political party for which a nomination is sought. Such statement shall be sworn to before some officer authorized to administer oaths in this State." (Ill. Rev. Stat. 1977, ch. 46, par. 7—10.)

Petitioner does not challenge the validity or constitutionality of the oath or certification requirement. Rather, petitioner urges that he has substantially complied with the requirements of this section of the Election Code. Accordingly, he argues the electoral board's decision to exclude his name from the ballot was against the manifest weight of the evidence. We note initially that the decision of the electoral board will not be reversed unless it is against the manifest weight of the evidence. See *Williams v. Butler* (1976), 35 Ill. App. 3d 532, 341 N.E.2d 394.

■■ In ruling on this matter, we are guided by several general principles. Restrictions on access to the ballot burden not only the right of individuals to associate for the advancement of political beliefs but also the right of qualified voters to cast their votes effectively. (*Illinois State Board of Elections v. Socialist Workers Party* (1979), 440 U.S. 173, 59 L. Ed. 2d 230, 99 S. Ct. 983.) Accordingly, the right of access to the ballot should not be impeded by unreasonable or unnecessarily burdensome requirements. (See *Lubin v. Panish* (1974), 415 U.S. 709, 39 L. Ed. 2d 702, 94 S. Ct. 1315; *Jenness v. Fortson* (1971), 403 U.S. 431, 29 L. Ed. 2d 554, 91 S. Ct. 1970.) A statutory notarization requirement, however, is not necessarily impracticable or unduly burdensome. *American Party of Texas v. White* (1974), 415 U.S. 767, 39 L. Ed. 2d 744, 94 S. Ct. 1296.

While petitioner concedes the validity of the oath provision, he nevertheless challenges respondents' contention that actual personal appearance of the circulator before the notary public is a mandatory requirement of the Election Code. Citing *Lawlor v. Municipal Officer Electoral Board* (1975), 28 Ill. App. 3d 823, 329 N.E.2d 436, respondents

argue that the requirements of a nominating petition listed in section 7—10 are mandatory. In subsequent cases, however, Illinois courts have not demanded strict conformity, inquiring instead whether there has been "substantial compliance" with the requirements of the Election Code. (See, *e.g., Lewis v. Dunne* (1976), 63 Ill. 2d 48, 344 N.E.2d 443; *Stevenson v. County Officers Electoral Board* (1978), 58 Ill. App. 3d 24, 373 N.E.2d 1043.) Among the omissions or errors which did not render nominating petitions invalid or disqualify candidates from a ballot position despite Election Code requirements are the following: failure to specify the vacancy sought in the statement of candidacy (*Lewis v. Dunne*); failure to number the petitions consecutively (*Stevenson v. County Officers Electoral Board; Williams v. Butler*); incorrectly stating the name of the office sought (*Stevenson v. County Officers Electoral Board*); failure to list the city of residence opposite the signature and residence address (*Madison v. Sims* (1972), 6 Ill. App. 3d 795, 286 N.E.2d 592); and failure to contain a statement that persons signing were qualified primary electors of, members of, or affiliated with a specific political party (*Dooley v. McGillicuddy* (1976), 63 Ill. 2d 54, 345 N.E.2d 102). In determining whether there was substantial compliance, these courts examined the particular function a specific requirement was designed to accomplish and considered whether the petition satisfied that purpose.

In *Lewis v. Dunne* (1976), 63 Ill. 2d 48, 52, 344 N.E.2d 443, the court noted that the general purpose of section 7—10 and related provisions is "to provide an orderly procedure whereby qualified persons seeking public office may enter primary elections." The circulator's oath requirement was discussed in *Williams v. Butler* (1976), 35 Ill. App. 3d 532, 341 N.E.2d 394. There, the court reasoned that requiring the circulator of a petition to certify that he circulated the petition, that signatures were placed thereon in his presence, that they were genuine, and that by his sworn statement he would subject himself to prosecution for perjury was a meaningful and realistic requirement designed to eliminate fraudulent signatures or the signing of many names by only a few people. The court also observed that the requirement was valid and substantial and was designed to preserve the integrity of the electoral process. In *Williams*, the court invalidated the petitions circulated by persons who failed to sign or appear before the notary and acknowledge the circulator's statement. The court deemed such failure to be noncompliance with section 7—10.

The facts in *Williams* are clearly distinguishable from the present case. In *Williams*, the objectionable petitions were circulated by three persons and contained approximately 6,000 names. An individual periodically would meet the circulators at a gas station, collect the petitions already signed by the circulators, and deliver them to the

candidate, who would then secure the requisite notarizations. Most importantly, in *Williams*, the objectors alleged that certain signatures were forgeries, and that some signatures had been made by the same person. Beyond the disparity between the instant case and *Williams* concerning the number of circulators and signatures challenged, no allegation of fraudulent conduct or forgery has been made in the present matter. After 13 signatures on Hernquist's sheets were invalidated for nonregistration or nonresidence of the signers, the sole objection to the remaining 37 signatures was the absence of personal contact between the circulator and the notary public. Moreover, the candidate here, unlike in *Williams*, did not in any way participate in the contested notarization procedure.

Furthermore, we agree with petitioner's assertion that the dual purpose of the oath requirement articulated in *Williams* has been sufficiently satisfied. First, the oath is designed to preserve the integrity of the electoral process by preventing forgeries and improper signatures. In the present case there is no allegation that the 37 signatures are not authentic, genuine signatures of primary electors in the 43d Ward. The second purpose of the oath is to subject the circulator to possible prosecution for perjury for falsifying the petition or engaging in other improper conduct. Petitioner argues that even in the absence of any notarization, this purpose is fulfilled by section 29—10 of the Election Code, which provides:

> "Perjury.) Any person who makes a false statement, material to the issue or point in question, which he does not believe to be true, in any affidavit, certificate or sworn oral declaration required by any provision of this Code shall be guilty of a Class 3 felony." (Ill. Rev. Stat. 1977, ch. 46, par. 29—10.)

While section 29—10 complements rather than supplants the oath requirement of section 7—10, when these sections are read together (see *Lewis v. Dunne*), it appears that a circulator could be subject to criminal prosecution even where he has not technically complied with the swearing requirement. In *State v. Lewis* (1975), 85 Wash. 2d 769, 539 P.2d 677, defendant was held properly convicted of perjury even though the false affidavit which he was accused of having executed was not signed or sworn to in the actual presence of the notary public. The court reasoned that the notary's physical absence at the time defendant signed the affidavit was an "irregularity" which could not serve as a defense to the perjury conviction. The court, relying on *In re Removal of Rice* (1962), 35 Ill. App. 2d 79, 181 N.E.2d 742, noted that no particular ritualistic form is necessary to take an oath. The court observed that the emphasis is upon some unequivocal act by which a person consciously takes upon himself the obligation of an oath. The court found that by voluntarily signing, in

the presence of an employee of the notary, a document entitled an affidavit which affirmatively stated that it was sworn on oath, defendant sufficiently performed such an unequivocal act.

Petitioner urges that while section 7—10 of the statute requires a circulator's petition to be sworn to before some officer authorized to administer oaths, the statute does not impose any formalistic, rigid method by which to administer an effective oath. In *In re Removal of Rice*, the court declined to apply technical procedures for administration of an oath. As respondents correctly observe, in each situation before the *Rice* court, the affiant signed in the presence of the notary and asked the latter to take some official action in regard to the affidavits. The court reasoned that such actions supported a finding that the oath administered was sufficient. The court did not, however, establish any minimum or formalized standard of conduct required for substantial compliance with the oath requirement under the Election Code.

■■ We believe that under the facts presented in this case, the circulator made a sufficiently unequivocal act by which he consciously took upon himself the obligation of an oath even though he did not acknowledge the sheets in the actual presence of the notary. The circulator voluntarily signed a certification statement declaring that he was a registered voter, residing in the 43d ward, that the signatures were signed in his presence, and were genuine, and that to the best of his knowledge the persons signing were qualified voters of the Democratic party residing in that ward. After reading this statement, the circulator, believing himself to be under oath, signed in the presence of a campaign worker. On the same day and in that same office, a notary public who recognized the circulator's signature, notarized the sheets.

Accordingly, we conclude that, in this situation and under these facts, there was substantial compliance with the requirements of section 7—10 of the Election Code. Any other conclusion would be unduly harsh to both the candidate and the primary electors who supported him. Consequently, we believe that the decision to invalidate the signatures in question was against the manifest weight of the evidence. After the signatures erroneously invalidated are added to the number of valid signatures submitted, petitioner will have satisfied the statutory signature requirement and is therefore entitled to have his name printed on the ballot.

For the reasons stated, the order of the circuit court of Cook County affirming the decision of the electoral board is reversed.

Order reversed.

RIZZI, J., concurs.

Miss PRESIDING JUSTICE McGILLICUDDY, dissenting:

I respectfully dissent from the majority's reversal of the order of the circuit court. I believe that the electoral board's decision to exclude the candidate from the ballot for noncompliance with section 7—10 of the Election Code was not against the manifest weight of the evidence. *Williams v. Butler* (1976), 35 Ill. App. 3d 532, 341 N.E.2d 394.

Section 7—10 requires a certification by the circulator at the bottom of each sheet of the nominating petition. In addition, the Code expressly provides that "[s]uch statement *shall* be sworn to *before* some officer authorized to administer oaths in this State." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 46, par. 7—10.

In *Williams v. Butler* the court invalidated certain sheets of the nominating petition which were not certified in the presence of the notary. The court observed that the purpose of this requirement was to substantiate that the petition was properly circulated and that the signatures were genuine. The court further stated that the requirement was "a substantial and valid requirement that relates to the integrity of the political process."

The majority attempts to distinguish the instant case from *Williams* by emphasizing the allegations of forgery in the petitions in *Williams*, whereas in this case there are no allegations of fraudulent conduct or forgery. I do not accept this distinction. In *Williams*, the court invalidated the petitions for lack of compliance with the notary requirement and deemed it unnecessary to consider the issue of forgery. Moreover, the court commented that it found the evidence of forgery far from adequate.

In the instant case there is no dispute that Robert Hernquist did not certify the petition in the presence of the notary. The majority concludes, however, that because Hernquist testified that he believed himself under oath when he signed the certification, he substantially complied with the Election Code. I cannot agree with this conclusion.

Each case cited in the majority opinion for the principle that there was "substantial compliance" with the requirements of the Election Code involved petitions which technically violated the form prescribed by the Code. For example, in *Lewis v. Dunne* the statement of candidacy described the office sought as "Judge of the Appellate Court of Illinois, First Judicial District" without indicating the particular vacancy although the electors' petitions described said vacancy. In *Stevenson v. County Officers Electoral Board* the candidate failed to number consecutively the pages of his nominating petition. I do not believe that the failure to comply with the substantive requirement of notarization can be equated with such technical violations of form.

The majority points out that one purpose of the oath, to subject the

154

circulator to possible prosecution for perjury, is satisfied by section 29—10 of the Code. Although I agree that pursuant to this section the State could prosecute a circulator for perjury despite a lack of notarization, I see an additional purpose for the requirement. I believe that the legislature hoped to impress upon the circulator the necessity for truth and the seriousness of the certification by requiring that he appear before an "officer authorized to administer oaths."

The majority's opinion effectively eliminates the requirement of notarization from the statute in holding that there is substantial compliance with the Code when a circulator of an unnotarized petition can testify that he consciously took upon himself the obligation of an oath when he signed the certification. Such a result clearly ignores the mandate of the legislature.

For the foregoing reasons, I would affirm the order of the circuit court of Cook County affirming the decision of the electoral board.