FRANK WICKER, Petitioner-Appellee, v. THE TOWN OF CICERO MUNICIPAL OFFICERS ELECTORAL BOARD *et al.*, Respondents-Appellants.

First District (6th Division)   No. 1—93—1218

Opinion filed May 21, 1993.

Odelson & Sterk, Ltd., of Evergreen Park (Burton S. Odelson, Mathias W. Delort, and Keri-Lyn J. Krafthefer, of counsel), and David A. Epstein and Gary A. Weintraub, both of Chicago, for appellants.

Judith B. Petrucci, of Lyons, for appellee.

JUSTICE GIANNIS delivered the opinion of the court:

In February, 1993, candidate Frank Wicker (petitioner) filed nominating papers with the clerk of the Town of Cicero for the office of town president. In order to be placed on the ballot for the April 20, 1993, election, petitioner needed nominating petitions containing the valid signatures of 532 registered voters. (Ill. Rev. Stat. 1991, ch. 46, par. 10—3.) Petitioner filed a total of 852 signatures, of which 273 were rejected by the office of the county clerk. This left petitioner with a total of 579 signatures, 47 more signatures than necessary for him to be placed on the ballot.

Thereafter, respondent Mark S. Moro filed objections with the Town of Cicero Municipal Electoral Board (the Board). Moro alleged that many of the remaining 579 signatures were invalid. (Ill. Rev. Stat. 1991, ch. 46, par. 10—8.) After hearing, the Board entered its decision on the matter March 18, 1993. It found that 92 of the 579 signatures tendered by petitioner should be invalidated, leaving petitioner with only 487 signatures. Petitioner was therefore 45 signatures below the number necessary to place him on the April 20 ballot.

Petitioner appealed the Board's decision to the circuit court which, after hearing, found that the Board's action with regard to 50 signatures was against the manifest weight of the evidence. (See Ill. Rev. Stat. 1991, ch. 46, par. 10—10.1.) The court, in an order dated April 7, 1993, restored these signatures, giving petitioner a total of 537 signatures—just five signatures more than necessary to place him on the ballot.

Moro and the Board thereafter brought an emergency appeal seeking to overturn the trial court's April 7 order. On April 15, 1993, we issued a summary order reversing the circuit court's order and reinstating the decision of the Board. In addition, on April 19, 1993, we denied petitioner's petition for rehearing. Petitioner was thereafter struck from the ballot. We explain our April 15, 1993, order here.

The Board argued that the circuit court's decision to reinstate 50 signatures should have been reversed. Because petitioner secured only five signatures more than necessary to keep him on the ballot, however, we need only address one of the issues raised by the Board, specifically, whether it was error for the circuit court to reverse the Board's finding that Sharon Arteaga had not personally circulated petition sheet number 34. Because we do not believe the Board abused its discretion on this single factual issue, we reversed the circuit court's order and reinstated the Board's initial decision striking petitioner from the ballot.[1]

■ The Election Code requires that a registered voter of the political division for which the candidate is nominated sign a statement on each nominating petition indicating that the signatures on the peti-

---

[1]Because petitioner has only five signatures more than necessary to keep him on the ballot, and because the parties appear to agree that six to eight signatures were solicited at the Colonial Inn over Ms. Arteaga's certification, we need not address the question of whether the Board, in invalidating all signatures certified by Arteaga, misapplied the court's decision in *Huskey v. Municipal Officers Electoral Board for the Village of Oak Lawn* (1987), 156 Ill. App. 3d 201, 509 N.E.2d 555. In addition, we note that petitioner has failed to argue that *Huskey* should be distinguished.

tion were signed in her presence. (Ill. Rev. Stat. 1991, ch. 46, par. 10—4.) Petition sheet number 34 contained the signature of Carl Brave and had been certified by circulator Sharon Arteaga.

The Board first heard the testimony of Carl Brave. Brave testified that he was tending bar at the Colonial Inn located on West Cermak Road on what he remembered to be a Tuesday. That day, two men came into his bar and solicited signatures from several of the customers. Brave described one of the men as a "pretty good size guy, wore glasses," and the other as a man wearing "a suit necktie and a topcoat." Brave stated that he and six to eight of the patrons in the bar signed the petition. On cross-examination Brave repeatedly insisted that he had not discussed the nominating petitions with anyone before testifying at the hearing. Brave admitted that he was the owner of the bar and that the bar's liquor license was in his wife's name. He also stated that he was served his subpoena to testify before the Board at the bar, although nominating petition number 34 indicated only his home address.

Sharon Arteaga testified in support of the signatures on nominating petition 34. Arteaga testified that she and her husband took nominating petitions to various bars on Cermak Road but that only she asked people to sign the petitions. She also testified that she was then pregnant, wore an overcoat, kept her hair short, often did not wear earrings and had, in the past, been mistaken for a man.

In its decision the Board stated the following:

> "FINDINGS AS TO CIRCULATOR SHARON L. ARTEAGA
>
> The Board finds witness Carl Brave's testimony to be very credible, honest and believable. The Board further finds that two men circulated Sheet 34 in a bar; that Mr. Brave testified that seven or eight other people in the bar signed the sheet and that no female was present. Counsel for the candidate attempted to convince the Board that Mrs. Arteaga could have been mistaken for a male which the board finds totally incredible after viewing Mrs. Arteaga (who testified she is currently 8½ months pregnant and was 6½ to 7 months pregnant at the time of circulation), who is an attractive blond with no male facial or body characteristics.
>
> Further, Mrs. Arteaga could not remember any of the bars she was allegedly in while purporting to circulate sheets 34, 35, 39 and 46, was hesitant, unsure and unconvincing in her testimony. The Board specifically finds her testimony *not* credible or believable based on the contradicting statements of Carl Brave,

her demeanor, and her answers to questions of both Objector and Candidates counsel." (Emphasis in original.)

In considering the same evidence on appeal, the trial court stated:

"This court finds that the determination of the Board with regard to Carl Brave versus Sharon Arteaga is against the manifest weight of the evidence.

I find that Carl Brave was substantially impeached in his testimony and that his testimony was not subject to reasonable belief by the Board.

I realize that the Court was reading nothing but a cold record, but I read the record and came to a different conclusion from that argued by counsel.

It seemed to me that the most direct testimony, the most unequivocal testimony, was that of Sharon Arteaga, and that Mr. Brave's testimony was unsure, was—lacked responsiveness, and it seemed to me that his identification testimony was vague, and I believe in the circumstances, unreliable and doubtful.

\* \* \*

But taking into account what I consider [Carl Brave's] interest, a financial interest in this matter, his being a [liquor] licensee of the very township in which this election is being held, the fact that they are—that there are members of that Board who hold a financial power over him, renders, to my judgment, his testimony to serious question, that it is impeached, and in fact, I believe that in the circumstances, when he says he talked to no one [about receiving a subpoena or testifying], it goes beyond credulity, in this Court's view.

The fact that he was the sole person and owner of an establishment, the spouse of a licensee of the Board, I believe goes beyond a reasonable adoption of that testimony by a fair-minded Board."

■ In reviewing the Board's findings of fact, we, like the trial court, must accord the Board's finding significant deference. (*Williams v. Butler* (1976), 35 Ill. App. 3d 532, 341 N.E.2d 394.) The findings of the Board are *prima facie* true, and there need only be some competent evidence in the record sufficient to support its finding. (See *Williams*, 35 Ill. App. 3d at 538, 341 N.E.2d at 399.) Review of electoral board decisions is not intended to provide a *de novo* hearing, but instead, "merely to provide a remedy against arbitrary or unsupported decisions." *Williams*, 35 Ill. App. 3d at 538, 341 N.E.2d at 398.

Based upon a review of the record, we conclude that the findings of the Board were not against the manifest weight of the evidence. Indeed, only the Board had the opportunity to observe the demeanor of the witnesses and the Board was clearly in the best position to judge the credibility of Arteaga and Brave. While we do not necessarily disagree with the trial court's observations regarding the testimony of Arteaga and Brave, we too have read the record and conclude that the Board was within its discretion in accepting Brave's version of the events over Arteaga's. When six names are eliminated, there are not sufficient signatures for petitioner to have his name appear on the ballot.

For the reasons stated, the judgment of the circuit court of Cook County is reversed and this cause is remanded to that court with directions to enter a judgment affirming the decision of the Board.

Reversed and remanded with directions.

McNAMARA, P.J., and EGAN, J., concur.