High Lake Poultry, Inc., Petitioner, *v.* The Pollution Control Board *et al.*, Respondents.

(No. 73-169;

Second District (2nd Division)—February 14, 1975.

Edward S. Margolis and Julian I. Silvertrust, both of Teller, Levit & Silvertrust, of Chicago, for petitioner.

William J. Scott, Attorney General, of Chicago (Harvey M. Sheldon, of Northern Regional Environmental Control Division, and George D.

Karcazes, Frederic J. Entin, and Meredeth Wright, Assistant Attorneys General, of counsel), for respondents.

Mr. JUSTICE DIXON delivered the opinion of the court:

This is a proceeding to review an order of the Pollution Control Board, commenced in this court pursuant to section 41 of the Environmental Protection Act. (Ill. Rev. Stat. 1973, ch. 111½, § 1041.) A complaint had been filed with the Board against High Lake Poultry, Inc., the petitioner here, by the Environmental Protection Agency. The Agency had charged High Lake with having constructed and operated its waste-treatment facilities without a valid permit, in violation of section 12(b) of the Act (Ill. Rev. Stat. 1971, ch. 111½, § 1012(b)), and with having operated those facilities without employing a certified operator, in violation of rules of the Sanitary Water Board which remained in effect. A hearing took place before a hearing officer designated by the Pollution Control Board. At that hearing High Lake admitted the violations charged but introduced evidence of mitigating circumstances. Thereupon the Pollution Control Board issued an order finding that the violations had occurred as alleged, and assessing penalties of $2,000 for constructing and operating the facilities without a permit and $500 for not having had a certified operator. It is this order which has been brought directly to us by High Lake for judicial review.

It appears from the record that High Lake Poultry, Inc., is a corporation engaged in the business of cutting up, sizing, boxing, and distributing poultry. At the present time it employs approximately 40 persons in its plant plus 8 truck drivers. The business was started as a home occupation in about 1942, but grew until a new building had to be built for it in 1959, near West Chicago, in Du Page County, Illinois. At that time a septic system was used for disposition of the wastes generated, which were primarily washdown wastes from the cleaning of equipment and walls, and not blood, feathers, or viscera from chickens.

The business continued to grow, and in 1965 an addition to High Lake's processing plant had to be constructed. High Lake applied to the Du Page County Building Department for a building permit, but was required to construct a sewage-disposal system prior to issuance of the permit. This was done. The new system treated the wastes in a sewage-treatment plan, from which the fluid passed into a pond for further treatment, and from therein to Kress Creek, a tributary of the Du Page River.

It developed that the sewage-disposal system did not work properly. Tests taken by the Sanitary Water Board showed an extremely high biochemical oxygen demand (B.O.D.). To correct this, High Lake employed

an engineer to prepare plans for a new sewage-treatment system, which were submitted to the Sanitary Water Board for approval. On October 8, 1969, the Sanitary Water Board issued a permit authorizing construction of the new facilities in accordance with those plans, which was to be valid for a period of 1 year.

By this time High Lake had plans for another addition to its plant, which was to be a welfare facility for its employees, consisting of larger lunchrooms, locker rooms, and washrooms. The Du Page County Building Department refused to issue a permit for this new addition, however, unless a cash bond of $10,000 were posted to guarantee that the proposed sewage-treatment facilities would reduce the B.O.D. to meet the Sanitary Water Board's limits. There was no certainty that the proposed facilities would do this, though the Sanitary Water Board had issued a permit in the expectation that the proposed new system would operate in accordance with its requirements. Therefore in the summer of 1970, with the encouragement of the Environmental Protection Agency, High Lake began negotiations with the city of West Chicago for the purpose of annexing and connecting into that city's sewage-treatment facilities. Efforts in this direction were brought to an end when the Agency notified High Lake on April 30, 1971, that West Chicago was having its own sewage-treatment problem.

Meanwhile, on April 9, 1971, High Lake received a memorandum from the Illinois Department of Agriculture, notifying High Lake that its welfare facilities were not large enough to meet the Department of Agriculture's requirements. The proposed new addition to the plant would have satisfied those requirements, but the Du Page County Building Department was still withholding issuance of a permit until it received a cash bond of $10,000 which might very possibly be forfeited, and High Lake's annexation efforts were going slowly. The Department of Agriculture demanded that High Lake commence construction of its proposed new welfare facility by June 15, 1971. If High Lake did not do so, its license to do business was to be revoked. Therefore, early in May of 1971, High Lake filed a new application with the Environmental Protection Agency for a permit to upgrade and expand its sewage-treatment facilities, resubmitting the plans which in 1969 had been approved by the Sanitary Water Board. Then on May 20, 1971, it was able to obtain the Du Page County Building Department's approval of its plans for the welfare facility, with the stipulation that occupancy would be denied until such time as the sewage-treatment improvements were under construction.

When High Lake filed its application for a new permit, its problems with the Department of Agriculture and its need for prompt issuance

of a permit were explained to the person on the Environmental Protection Agency staff who appeared to be in charge of the issuance of permits. His response was that he had a number of other permit applications to review before High Lake's, that he took them in order as they came in, and that it would be quite some time before he would be able to get to High Lake's application. This person was subsequently issued a subpoena for appearance at the hearing before the Pollution Control Board's hearing officer, but failed to appear before the hearing officer or to offer an excuse for his absence. After submission of the plans, calls were made by High Lake once or twice a week to learn whether review of its plans had been begun, and finally, when it was obvious that a permit would not be issued by the Agency before the Department of Agriculture's June 15 deadline for beginning work on the welfare facility, High Lake began construction of its proposed sewage-treatment improvements without a permit, in accordance with the plans which had previously been submitted to and approved by the Sanitary Water Board in 1969.

On June 11, 1971, High Lake was visited by an inspector from the Environmental Protection Agency, who notified High Lake that it was in violation of the Act because of its having commenced construction without a permit. By letter dated July 28, 1971, High Lake was informed that its application for a permit was denied. Action had to be taken within 90 days of the filing of High Lake's application in early May, or a permit would have been deemed issued, under section 39(a) of the Act. (Ill. Rev. Stat. 1973, ch. 111½, § 1039(a).) Printed at the bottom of the letter was this additional information: "In the New Illinois, we accomodate!" [sic]

Subsequently High Lake attempted through correspondence and telephone calls to determine what the Environmental Protection Agency wanted done, and filed another permit application with plans revised to meet the Agency's current requirements. By the time of the hearing on the complaint the Agency had meanwhile filed against it, not much work remained for High Lake to do. Furthermore, by the time of the hearing High Lake had a certified operator for its waste-treatment facilities. This was the general contractor who had constructed and supervised the operation of the facilities but had not earlier been employed by High Lake in the capacity of registered engineer.

The issue before us is whether the fines imposed on High Lake for the admitted violations are justified in the circumstances presented by the record. It appears to us that if the Environmental Protection Agency employee officially responsible for issuing permits had considered High Lake's application ahead of the many others filed before it, making allowance for the extraordinary pressures on High Lake at the time, he

might have completed his review and given High Lake its permit, with such conditions imposed as he deemed necessary, before High Lake came to decide it had to proceed without a permit. It appears to us, further, that if a variance from the requirement of a permit should have been sought, as the Agency now argues, High Lake should have been so advised, although it is not evident to us why a variance might have been expected any sooner than a permit, the legislature having allowed 90 days for action on variance requests also. (Ill. Rev. Stat. 1973, ch. 111½, § 1038.) It appears, further, that in this case a relatively small business was being put to considerable trouble and expense, was trying to cooperate with the various governmental bodies which seemed to be aligned against it, and was ultimately penalized for being too early rather than too late in making improvements to its sewage-treatment system, on the instigation of an agency responsible in some measure for the company's predicament.

■■ It is established that the principal reason for authorizing the imposition of civil penalties was to provide a method to aid the enforcement of the Act, and punitive considerations were secondary. (*City of Monmouth v. Pollution Control Board,* 57 Ill.2d 482, 490; *Lonza, Inc. v. Pollution Control Board,* 21 Ill.App.3d 468, 470.) Where cooperation has been shown, compliance with the Act has already come about, and the imposition of a civil penalty would in no way aid the enforcement of the Act, it has been held that a fine is improper. (*Bresler Ice Cream Co. v. Pollution Control Board,* 21 Ill.App.3d 560; *Chicago Magnesium Casting Co. v. Pollution Control Board,* 22 Ill.App.3d 489, 317 N.E.2d 689, 693-94; *CPC International, Inc. v. Pollution Control Board,* 24 Ill.App.3d 203, 321 N.E.2d 58, 61.) Since the Agency may be considered to have contributed in some degree to the situation which caused High Lake to build without a license, and High Lake has shown its willingness to cooperate, is now in substantial compliance with all of the Agency's requirements, and has doubtless incurred sizeable legal expenses also, we have concluded that fines should not have been imposed by the Board in this case. Accordingly, that part of the Board's order finding violations to have occurred is affirmed but that part of its order assessing penalties is vacated.

Affirmed in part and vacated in part.

RECHENMACHER, P. J., and T. MORAN, J., concur.