THE ENVIRONMENTAL PROTECTION AGENCY *et al.*, Plaintiffs-Appellees, v. FITZ-MAR, INC., Defendant-Appellant.

First District (2nd Division)  No. 88—892

Opinion filed December 30, 1988.

556

Thomas J. Murphy, P.C., of Chicago, and Collins & Flynn, of Springfield, for appellant.

Neil F. Hartigan, Attorney General, of Springfield, and Richard M. Daley, State's Attorney, of Chicago (H. Alfred Ryan and Jerry Karr, Assistant Attorneys General, of Chicago, and Glenn Sechen, Anthony C. Sabbia, and Kevin A. Moore, Assistant State's Attorneys, of counsel), for appellees.

PRESIDING JUSTICE HARTMAN delivered the opinion of the court:

Defendant Fitz-Mar, Inc., appeals from a circuit court order granting plaintiffs' motion for a preliminary injunction and insists the lower court abused its discretion in granting the motion for injunctive relief.

Defendant, a corporation licensed to do business in Illinois, operates a solid waste landfill in Chicago Heights, Illinois, pursuant to a permit received in 1981 from plaintiff Illinois Environmental Protection Agency (IEPA or agency). The landfill is divided into 16 separate dumping areas or cells; defendant must obtain an operational permit from the IEPA for each area before it may commence dumping refuse there.

On February 26, 1987, the IEPA, plaintiff State's Attorney of Cook County, Illinois (State's Attorney), and plaintiff Attorney General of Illinois (Attorney General), both as counsel to the agency and under their independent authority, filed a two-count, verified complaint against defendant. Count I alleged that: on September 20, 1986, plaintiffs filed a complaint with the Illinois Pollution Control Board (Board) concerning defendant's alleged dumping of refuse in unpermitted areas and other violations of the Illinois Environmental Protection Act (Act) (Ill. Rev. Stat. 1987, ch. 111½, par. 1001 et seq.); the 1986 complaint was still pending before the Board; and defendant had additionally dumped waste in other, unpermitted cells, in violation of, inter alia, section 21 of the Act (Ill. Rev. Stat. 1987, ch. 111½, par. 1021). Relief requested by plaintiffs included an injunction to restrain defendant from depositing refuse in unpermitted portions of the landfill and the imposition of fines. In count II, plaintiffs alleged that "[b]y or before July, 1986," defendant improperly allowed to collect, and failed to properly dispose of, leachate at the landfill; the complaint filed with the Board alleged improper handling of leachate at the site; and defendant submitted a leachate management plan to the agency which the agency rejected on February 11, 1987. Plaintiffs requested that the court levy fines and enjoin defendant from violating the Act by collecting and pumping leachate and contaminants into waters within and without the landfill.

On the same day, plaintiffs moved for a preliminary injunction and unsuccessfully moved for a temporary restraining order to enjoin defendant from violating the Act. Defendant answered and moved to dismiss; plaintiffs responded thereto.

Following hearings held pursuant to plaintiffs' motion on March 19, 1987, the circuit court entered an order: (1) granting a prelimi-

nary injunction enjoining defendant from discharging contaminants into a creek running adjacent to the landfill; (2) ordering defendant to file a completed application for a leachate management system and applications for operating permits for areas 12 through 16 within seven days; (3) stating that plaintiffs would review the applications pursuant to their statutory authority; (4) preliminarily enjoining defendant from accepting refuse from any source other than the City of Chicago Heights pending further litigation or until the court ordered otherwise; and (5) preliminarily enjoining defendant from dumping or depositing refuse in any area of the landfill where no refuse was currently present, including but not limited to area 16 and that part of area 15 where no refuse existed. An additional order, entered April 13, 1987, denied plaintiffs' request to enjoin dumping in unpermitted areas.

On May 13, 1987, plaintiffs moved the court to vacate the April 13 order and for further injunctive relief. Addressing the court's refusal to enjoin the dumping of waste in unpermitted cells, plaintiffs stated that: (1) plaintiffs need only demonstrate a violation of the Act and standing to be entitled to injunctive relief; and (2) in the hearing held pursuant to the motion for a preliminary injunction, "it was admitted that [d]efendant had purposely, was currently, and intended to continue to dump refuse in areas of its landfill which were not permitted to accept refuse." Plaintiffs also asserted that: (1) on March 27, 1987, defendant submitted applications for permits to operate areas 12 through 16 and for a permit to operate a leachate management system; (2) on April 23, 1987, the IEPA issued to defendant a letter of rejection, or "deemed not filed," regarding the application for a permit to operate a leachate management system; (3) on April 24, 1987, the agency issued to defendant a "deemed not filed" letter, rejecting the applications for permits to operate areas 12 through 16 and delineating further material necessary to complete the applications; (4) data submitted by defendant with the applications for dumping permits indicated elevated groundwater levels of various contaminants; (5) the groundwater data, collected from bedrock beneath the landfill, was due to the operation of the dumping ground; (6) plaintiffs had received information from Burt Fowler (Fowler), defendant's registered engineer, that areas 12 and 13 of the landfill were "filled onto the existing side slopes of Chicago Heights Municipal No. 1 Landfill"; and (7) that practice exceeded defendant's authority as granted by the developmental permit issued by the agency. Plaintiffs asked the court to reconsider the order entered April 13, 1987, refusing to enjoin the unpermitted dumping and grant plaintiffs an evidentiary hearing to

present the additional evidence raised by this motion.

The circuit court denied plaintiffs' motion to reconsider on February 17, 1988, and, following hearings, entered an order on March 1, 1988, enjoining defendant from depositing refuse in unpermitted refuse cells. Defendant appeals.

I

Defendant initially maintains the court abused its discretion by enjoining defendant where plaintiffs were responsible for defendant's failure to comply with the Act. Defendant argues that, at a meeting held one month following receipt of the "deemed not filed" letters, IEPA permit manager Charlie Zeal (Zeal) told Fowler that the agency would not grant operational permits to defendant absent proof that defendant was not the cause of the groundwater contamination. Based on this representation, defendant concentrated its efforts on resolving the groundwater dilemma and failed to submit to the agency the material sought in the "deemed not filed" letters; Fowler was trying to address the problems "in the proper order of priority."

Plaintiffs characterize defendant's claim as equitable estoppel, or the effect of voluntary conduct of a party whereby he is precluded from asserting rights against another party who has, in good faith, relied upon such conduct and has been led thereby to change his position for the worse. (*Willowbrook Development Corp. v. Pollution Control Board* (1981), 92 Ill. App. 3d 1074, 1078, 416 N.E.2d 385; see also *Jones v. Meade* (1984), 126 Ill. App. 3d 897, 902-03, 467 N.E.2d 657.) To prevail, defendant must demonstrate: (1) words or conduct by plaintiffs constituting either a misrepresentation or concealment of material facts; (2) plaintiffs' knowledge that representations made were untrue; (3) defendant did not know the representations to be false either at the time they were made or at the time they were acted upon; (4) plaintiffs intended or expected that their conduct or representations would be acted upon by the defendant; (5) defendant relied or acted upon the representations; and (6) defendant would be in a position of prejudice if plaintiffs are permitted to deny the truth of the allegations made. *Willowbrook Development Corp. v. Pollution Control Board*, 92 Ill. App. 3d at 1079.

Plaintiffs note that the IEPA may demand any information it deems vital to the permit review process (see 35 Ill. Adm. Code 807.207, 807.315 (1985)); to assert, therefore, that additional information may be necessary before the agency issues a permit is a legitimate request, not a misrepresentation or concealment of a material fact. Moreover, Zeal's alleged statements that the permit applications

would not be considered until defendant resolved the leachate problem did not prevent defendant from submitting the information requested in the "deemed not filed" letters. By Fowler's own account, the material sought by the agency would require very little time to assemble; furthermore, the IEPA never asserted that the supplemental permit data could not be considered on its own merits.

Defendant mistakenly relies on *Metropolitan Sanitary District v. Pollution Control Board* (1975), 62 Ill. 2d 38, 46, 338 N.E.2d 392, and *High Lake Poultry, Inc. v. Pollution Control Board* (1975), 25 Ill. App. 3d 956, 959-60, 323 N.E.2d 612, where competing demands from different agencies rendered compliance with IEPA requirements impossible.

In the case at bar, no impossibility existed; Fowler testified that he could have compiled the information requested within two hours to supplement defendant's permit applications. No abuse of discretion occurred in granting the injunctive relief requested.

II

Defendant insists that the court abused its discretion in granting the preliminary injunction because plaintiffs' motion exceeded their statutory authority. The legislative intent animating the statute limits the Attorney General or State's Attorney to injunctive relief for only those acts constituting a common law nuisance, according to defendant; enjoining defendant from operating his business for a "technical" violation of the Act imposes a disproportionate penalty, is punitive, and constitutes reversible error.

Section 42(e) of the Act provides (Ill. Rev. Stat. 1987, ch. 111½, par. 1042(e)):

"The State's Attorney of the county in which the violation occurred, or the Attorney General, may, at the request of the Agency or on his own motion, institute a civil action for an injunction to restrain violations of this Act."

Under this section, a claim for injunctive relief is not governed by general equitable principles or the rules of common law nuisance. When, as here, the statute authorizes such an action, plaintiffs need only show defendant's violation of the Act and that plaintiffs have standing to pursue the cause. (*People v. Van Tran Electric Corp.* (1987), 152 Ill. App. 3d 175, 184, 503 N.E.2d 1179; *People v. Keeven* (1979), 68 Ill. App. 3d 91, 97, 385 N.E.2d 804; see also *Sadat v. American Motors Corp.* (1983), 114 Ill. App. 3d 376, 380, 448 N.E.2d 900, *aff'd* (1984), 104 Ill. 2d 105.) No discretion is vested in the circuit court to refuse to issue an injunction to enforce the statute's terms.

*People v. Van Tran Electric Corp.*, 152 Ill..App. 3d at 184.

■■ In the case *sub judice*, plaintiffs requested injunctive relief for defendant's alleged violation of section 21 of the Act, which forbids unpermitted waste storage or disposal. (Ill. Rev. Stat. 1987, ch. 111½, par. 1021(p).) Evidence introduced by plaintiffs established defendant's misconduct, namely, an admission by Fowler that defendant dumped refuse in unpermitted areas. Defendant never questioned plaintiffs' standing to bring this claim, nor does the record disclose grounds to suggest they lack standing.

That section 42(e) mandates equitable relief for any noncompliance with the Act is supported, moreover, by the existence of section 43(a). (Ill. Rev. Stat. 1987, ch. 111½, par. 1043(a).) Pursuant to this provision, the State's Attorney or the Attorney General may pursue an *ex parte* injunction where they demonstrate that the discharge or activity complained of poses "substantial danger to the environment or to the public health," not based upon a violation of the Act. (*People v. Keeven*, 68 Ill. App. 3d at 96; Ill. Rev. Stat. 1987, ch. 111½, par. 1043(a).) By contrast, no damage need be shown under section 42(e); the General Assembly determined that any act contravening the statute constitutes a *per se* contribution to or cause of environmental damage. *People v. Keeven*, 68 Ill. App. 3d at 96.

■■ Finally, defendant's resort to legislative debates does not persuade. Following this court's decision in *People ex rel. Scott v. Janson* (1973), 10 Ill. App. 3d 787, 793, 295 N.E.2d 140, *rev'd* (1974), 57 Ill. 2d 451, which limited injunctive relief to instances of "extreme emergency with immediate danger to public health," a bill to codify that decision was introduced in the State legislature. In response to that bill, Representative Telcser proposed separate legislation to further amend the Act to include what is now section 42(e). (Ill. Rev. Stat. 1987, ch. 111½, par. 1042(e).) Representative Telcser's amendment prompted the following colloquy in the Illinois House of Representatives (78th Ill. Gen. Assem., House Proceedings, May 31, 1973, at 90, 93):

"REPRESENTATIVE TELCSER: This bill, among other things, *** takes away from your State's Attorney and from the Attorney General the power to seek injunctive relief beyond emergency relief on pollution cases. Now, this is the current law ***. This amendment would retain those provisions of the current law.

*   *   *

REPRESENTATIVE SHEA: Nobody's trying to take any power, but if you read your amendment, what you're trying to

do is to set up a little E.P.A. with every State's Attorney and the Attorney General throughout the State of Illinois.

REPRESENTATIVE TELCSER: Gerry, that's not true, all we want to do is retain the power which they have now."

Defendant insists that Representative Telcser's statements illustrate an intent that the State be limited to enjoining common law nuisances. Nowhere in these debates, however, does the legislator refer to the Attorney General's or State's Attorneys' common law powers; indeed, Representative Telcser averred only that he hoped to preserve for these agencies authority provided by "section 42 of the current law." (78th Ill. Gen. Assem., House Proceedings, May 31, 1973, at 90-91.) The pertinent provisions of section 42 at that time coincided closely with the present statute (Ill. Rev. Stat. 1971, ch. 111½, par. 1042):

"Any person who violates any provision of this Act *** may be enjoined from continuing such violation as hereinafter provided. ***

The State's Attorney of the county in which the violation occurred, or the Attorney General shall bring such actions in the name of the people of the State of Illinois."

It appears, therefore, that the legislature intended to preserve plaintiffs' authority to seek an injunction for any violation of the Act; the circuit court did not abuse its discretion by enjoining defendant.

### III

▮ Defendant next urges the circuit court lacked jurisdiction to issue the injunction and abused its discretion in doing so. Defendant contends that the doctrine of primary jurisdiction applies, rendering improper any judicial consideration of plaintiffs' motion prior to their exhaustion of available administrative remedies.

Section 42(e), which unequivocally allows plaintiffs to pursue equitable relief for violations of the Act, does not direct that the claim is cognizable in the first instance by an administrative agency only. *Village of Wilsonville v. SCA Services, Inc.* (1979), 77 Ill. App. 3d 618, 625, 627, 396 N.E.2d 552, *aff'd and remanded* (1981), 86 Ill. 2d 1.

Further proof that the legislature intended to allow judicial relief independent of administrative remedies available under the Act exists in section 2 of "An Act in relation to the prevention and abatement of air, land and water pollution" (Ill. Rev. Stat. 1987, ch. 14, par. 12) permitting the Attorney General to seek judicial relief from environmental pollution, regardless of the pendency of any administrative action. (*People ex rel. Scott v. Janson* (1974), 57 Ill. 2d 451, 458-59,

312 N.E.2d 620; *People ex rel. Scott v. United States Steel Corp.* (1976), 40 Ill. App. 3d 607, 611, 352 N.E.2d 225.) The court therefore possessed jurisdiction to enter the relief requested.

## IV

■ Defendant next asserts the court erroneously neglected to consider four factors listed in section 33(c)[1] of the Act (Ill. Rev. Stat. 1985, ch. 111½, par. 1033(c)) and failure to examine these criteria merits reversal of the court's decision.

Plaintiffs correctly respond that section 33(c) addresses hearings before the Board only and has no bearing on plaintiffs' complaint and motion for injunctive relief. Furthermore, section 33(c)'s specificity arises from the composition of the Board itself; its members are "technically qualified" individuals only and not required to have any legal training. (Ill. Rev. Stat. 1987, ch. 111½, par. 1005(a).) The guidance provided by section 33(c) is intended to prevent arbitrary Board decisions. (*Sangamo Construction Co. v. Pollution Control Board* (1975), 27 Ill. App. 3d 949, 954, 328 N.E.2d 571.) No such considerations are needed to guide the circuit court. Further, as stated in the preceding paragraphs, plaintiffs are entitled to injunctive relief merely by demonstrating standing and violation of the Act. (Ill. Rev. Stat. 1987, ch. 111½, par. 1042(e).) Section 33(c) did not control the circuit court's ruling on plaintiff's motion for injunctive relief.

For the foregoing reasons, we affirm the circuit court's order of March 1, 1988.

Affirmed.

BILANDIC and SCARIANO, JJ., concur.

---

[1] A 1987 amendment to section 33(c) added a fifth factor for consideration. Ill. Rev. Stat. 1987, ch. 111½, par. 1033(c).