THE PEOPLE *ex rel.* JAMES E. RYAN, Attorney General of the State of Illinois, *ex rel.* Marshall Douglas, State's Attorney of Rock Island County, Illinois, Plaintiff-Appellee, v. IBP, INC., Defendant-Appellant.

Third District    No. 3—99—0114

Opinion filed December 30, 1999.

Thomas W. Dimond, Percy Angelo, and Russell R. Eggert, all of Mayer, Brown & Platt, of Chicago, for appellant.

James E. Ryan, Attorney General, of Chicago (Joel D. Bertocchi, Solicitor General, and Brian F. Barov, Assistant Attorney General, of counsel), for appellee.

JUSTICE KOEHLER delivered the opinion of the court:

The defendant-appellant, IBP, Inc., was granted leave by this court to file an interlocutory appeal pursuant to Supreme Court Rule 308 (155 Ill. 2d R. 308) of the Rock Island County circuit court's denial of its motion to dismiss counts I and III of the plaintiff-appellee Illinois Attorney General's (State's) complaint for failure to plead sufficient facts. The certified question we must answer is whether a plaintiff in a case filed in circuit court alleging a violation of section 9(a) of the Illinois Environmental Protection Act (415 ILCS 5/9(a) (West 1998)) must plead facts regarding the unreasonableness of the alleged emissions, including facts regarding technological practicability and economic reasonableness of additional controls. In answer to the certified question, this court concludes that, in an action brought in circuit court alleging a violation of section 9(a) of the Illinois Environmental Protection Act, the complainant is not required to plead facts regarding technological practicability and economic reasonableness. Accordingly, we affirm.

## FACTS

The defendant, IBP, owns and operates a beef slaughtering and processing facility near the small unincorporated town of Jocelin, Illinois, in Rock Island County. The facility includes animal holding

pens, slaughtering and rendering operations, a tannery, wastewater treatment system, and areas for the application of sludge generated from the wastewater treatment system and other materials produced at the site. The plaintiff, the Attorney General, brought an action in the circuit court for injunctive relief under section 42 of the Illinois Environmental Protection Act (415 ILCS 5/42(e) (West 1998)) (Act) seeking an injunction and civil penalties against IBP. The State alleges in count I of its complaint a violation of section 9(a) of the Act, which prohibits the discharge of contaminants or emissions that cause air pollution. Count I alleges that: (1) local residents have complained of foul odors and smells emanating from the facility causing headaches, burning lips and noses, upset stomachs and nausea; (2) the odors can be smelled inside closed cars and buildings; (3) Jocelin's citizens have been forced to refrain from outdoor activities; (4) Illinois Environmental Protection Agency (IEPA) inspections of the plant have identified the tannery, gel-bone plant, rendering plant and sewer system as sources of the odors; and (5) the odors violate section 9(a) because they are air pollution within the meaning of the Act and are in sufficient quantities as to be "injurious to human, plant or animal life, or to unreasonably interfere with the enjoyment of life or property." In count I, the State seeks relief in the form of a preliminary and permanent injunction and asks the court to compel IBP to perform an odor-abatement study and take remedial action indicated by the study to prevent the nuisance.

In count III the State alleges a violation of section 9(a) and section 201.141 of the Administrative Code (35 Ill. Adm. Code § 201.141 (1999)) resulting from three separate incidents in which IBP released harmful contaminants into the environment. The first alleged incident occurred October 8, 1997, when the facility's cooling unit equipment failed, releasing anhydrous ammonia into the air. The second alleged incident occurred from January 7, 1995, until March 4, 1998, when IBP daily released between 100 to 325 pounds of ammonia into the environment as a result of "a change in source of yet unidentified equipment" at the facility. The third incident was a spill of 200 to 400 gallons of sulfuric acid in the facility, causing the formation of a sulfuric acid cloud and resulting in a temporary shutdown of the tannery and release of the acid into the environment. Count III alleges all three incidents of release into the environment are air pollution because they are injurious to human, plant, or animal life and unreasonably interfere with the enjoyment of life or property. The State is asking the court to order IBP to: (1) cease and desist from further violations of the Act; (2) conduct a hazard and operability study through a state-approved independent consultant and take any reme-

dial measures indicated to prevent further release; (3) pay civil penalties of $50,000 for each violation and $10,000 for each day of violation; and (4) pay the costs of this action.[1]

IBP filed a motion to dismiss counts I and III of the first amended complaint because the State failed to allege whether any methods of further controlling the emissions are technically practical or economically reasonable. Concluding that the Act only requires such pleading in an administrative action and not in an action brought in the circuit court, the circuit court denied IBP's motion. In so concluding, the circuit court noted that the decision would result in different pleading requirements under section 9(a) depending on whether the claim was brought before the circuit court or the environmental protection board. The circuit court concluded that, in accordance with Supreme Court Rule 308(a) (155 Ill. 2d R. 308), an immediate appeal from its order and resolution of the contested issue would materially advance the ultimate termination of the litigation and that the order involved a question of law as to which there are substantial grounds for differences of opinion. Accordingly, the circuit court granted IBP's motion requesting it to make findings to certify the issue for interlocutory appeal. And this court allowed IBP's application for leave to appeal pursuant to Supreme Court Rule 308(a).

## ANALYSIS

■ On interlocutory appeal, this court is limited to answering the question certified by the circuit court and our review is *de novo. Lanxon v. Magnus*, 296 Ill. App. 3d 377, 379, 694 N.E.2d 610, 611 (1998). The facts are not at issue in this appeal. Rather, the issue is whether the circuit court correctly interpreted the pleading requirements under section 9(a). Statutory construction is a question of law, and our review is *de novo. Advincula v. United Blood Services*, 176 Ill. 2d 1, 12, 678 N.E.2d 1009, 1015 (1996).

IBP argues that the circuit court should have concluded that, in an action brought in circuit court on a violation of section 9(a), the complainant is required to plead the technological practicability and economic reasonableness of reducing or eliminating the emissions resulting from the pollution source. According to IBP, when an allegation of a section 9(a) violation is brought before the Illinois Pollution Control Board (Board), in determining whether there has been such a

---

[1]Counts II and IV are not at issue in this appeal. In count II, the State alleges IBP failed to properly maintain equipment. In count IV, the State alleges common law public nuisance based on the facts of counts I and III and, in count V, alleges statutory public nuisance also based on the facts of counts I and III.

violation, the Board must refer to other sections of the Act, specifically section 3.02 (415 ILCS 5/3.02 (West 1998)), which defines air pollution, and section 33(c), which enumerates factors the Board must consider in making its determination. In particular, section 33(c)(iv) of the Act (415 ILCS 5/33(c) (West 1998)) requires the Board to consider the technological practicability and economic reasonableness of reducing emissions. Consequently, in a Board action, the complainant must plead technological practicability and economic feasibility. In addition, the Board must remember that the Act's purpose is to create a unified statewide program for environmental protection (415 ILCS 5/2(a)(ii) (West 1998)). IBP argues that, inasmuch as the legislature conferred concurrent jurisdiction under the Act to the Board and to the circuit court, section 33(c) must also apply to circuit court actions. Otherwise, a difference in pleading requirements based on the forum in which a violation is brought results. Therefore, in the instant case, the State must plead reasonableness, including technological practicability and economic feasibility. Because it did not so plead, the circuit court should have granted the motion to dismiss for failure to plead all of the essential elements of the claim.

The State replies that section 33(c) by its own terms applies only to the Board. The action at bar is brought before the circuit court; therefore, the State is not required to plead technological practicability and economic reasonableness. The State argues that, to fulfill the Act's purpose to establish a unified statewide program for environmental protection, the Act should be liberally construed to assure that the adverse effects upon the environment are borne by those who cause them. Further, under section 31(e) of the Act (415 ILCS 5/31(e) (West 1998)), wherein the burden of proof is set out, the Board must show that the respondent has caused or threatened to cause air or water pollution or has violated or threatens to violate any provision of the Act or Board rules or regulations. Section 33(c) only enumerates criteria the Board must consider in making its determination. Accordingly, neither a Board action nor a circuit court action requires the complainant to plead technical feasibility or economic reasonableness.

Moreover, the State argues that even if a complainant is required to so plead, section 33 applies only to Board actions. The instant case seeks an injunction pursuant to section 42, which gives the State a broad action to remedy environmental violations. In such an action, the section 33(c) factors need not be pled. To require such pleading turns the circuit court action into an administrative action. Section 33(c) provides guidance and prevents arbitrary decisions by the Board, whose members do not necessarily have legal training. Moreover, requiring different pleadings in administrative and circuit court

proceedings does not undermine the goal of establishing uniformity in environmental proceedings. Uniformity refers to whether the Act controls or preempts local authority, and a difference in pleading requirements does not have any affect on such question. Lastly, giving the State and the circuit court more far-reaching powers to enforce the Act enhances its remedial purpose.

■ "[The] court's role in interpreting statutes is to give effect to the intention of the legislature, and the language of the statute is the starting point of the court's analysis. [Citations.] When the language of the statute is clear and unambiguous, it will be given effect without resort to other tools of construction. [Citation.] A court should not depart from the language of the statute by reading into it exceptions, limitations or conditions that conflict with the intent of the legislature. [Citation.]" *Gem Electronics of Monmouth, Inc. v. Department of Revenue*, 183 Ill. 2d 470, 475, 702 N.E.2d 529, 532 (1998). "[T]he statute should be evaluated as a whole; each provision should be construed in connection with every other section. [Citations.]" *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 397, 634 N.E.2d 712, 714 (1994).

■ The following sections of the Act are relevant to the analysis of the question before this court.

Section 9(a) of the Act, which the State alleges IBP has violated, states:

"No person shall:

(a) Cause or threaten or allow the discharge or emission of any contaminant into the environment in any State so as to cause or tend to cause air pollution in Illinois, either alone or in combination with contaminants from other sources, or so as to violate regulations or standards adopted by the Board under this Act." 415 ILCS 5/9(a) (West 1998).

Under the Act, air pollution is defined as:

"the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human, plant, or animal life, to health, or to property, or to unreasonably interfere with the enjoyment of life or property." 415 ILCS 5/3.02 (West 1998).

Section 33(c) provides:

"(c) *In making its orders and determinations, the Board shall take into consideration all the facts and circumstances bearing upon the reasonableness of the emissions, discharges or deposits involved including, but not limited to:*

(i) the character and degree of injury to, or interference with the protection of the health, general welfare and physical property of the people;

(ii) the social and economic value of the pollution source;

(iii) the suitability or unsuitability of the pollution source to the area in which it is located, including the question of priority of location in the area involved;

(iv) the technical practicability and economic reasonableness of reducing or eliminating the emissions, discharges or deposits resulting from such pollution source; and

(v) any subsequent compliance." (Emphasis added.) 415 ILCS 5/33(c) (West 1998).

Section 31 of the Act provides in pertinent part:

"(e) In hearings *before the Board* under this Title the burden shall be on the agency or other complainant to show either that the respondent has caused or threatened to cause air *** pollution or that the respondent has violated or threatens to violate any provision of this Act or any rule or regulation of the Board or permit term or condition thereof. If such proof has been made, the burden shall be on the respondent to show that compliance with the Board's regulations would impose an arbitrary or unreasonable hardship." (Emphasis added.) 415 ILCS 5/31(e) (West 1998).

The legislature explained the Act's purpose as follows:

"(ii) [T]hat because environmental damage does not respect political boundaries, it is necessary to establish a unified state-wide program for environmental protection and to cooperate fully with other States and with the United States in protecting the environment;

(iii) that air, water, and other resource pollution, public water supply, solid waste disposal, noise, and other environmental problems are closely interrelated and must be dealt with as a unified whole in order to safeguard the environment;

***

(b) [i]t is the purpose of this Act, as more specifically described in later sections, to establish a unified, state-wide program supplemented by private remedies, to restore, protect and enhance the quality of the environment, and to assure that adverse effects upon the environment are fully considered and borne by those who cause them." 415 ILCS 5/2 (West 1998).

In *Incinerator, Inc. v. Pollution Control Board*, 59 Ill. 2d 290, 293, 319 N.E.2d 794, 796 (1974), Incinerator had pled as an affirmative defense that compliance was technologically unfeasible. Our supreme court instructed:

"It is evident that *** the legislature has by definition created two categories of 'air pollution.' The first is the presence in the atmosphere of one or more contaminants in sufficient quantities and of such characteristics and duration as to be injurious to human,

plant, or animal life, to health, or to property. The second category is the presence of such contaminants in such amounts, characteristics and duration as to unreasonably interfere with the enjoyment of life or property. We are here concerned with the second category of air pollution, and the issue[ ] may be summarized as follows: (1) Must the various factors specified in section 33(c) be proved and considered *** in determining whether there has been a violation of the Act by causing air pollution of the type which unreasonably interferes with the enjoyment of life or property ***?" 59 Ill. 2d at 295, 319 N.E.2d at 796-97.

The supreme court concluded:

"[T]he EPA had the burden of proving all essential elements of the type of air-pollution violation charged, and the Board must then assess the sufficiency of such proof by reference to the section 33(c) criteria, basing thereon its findings and orders." *Incinerator, Inc.*, 59 Ill. 2d at 300, 319 N.E.2d at 799.

In the case at bar, the State has pled both categories of air pollution in counts I and III and it is only section 33(c)(iv) which IBP argues the State was required, but failed, to plead.

■ In reviewing cases brought before the Board, our supreme court has stated, "the unreasonableness of alleged [category two] air pollution *** must be determined with reference to [section 33(c)] criteria." *Wells Manufacturing Co. v. Pollution Control Board*, 73 Ill. 2d 226, 233, 383 N.E.2d 148, 151 (1978). However, the court went on to say:

"This does not mean, however, that the Board must find against the respondent on each of the four statutory criteria of section 33(c), or that the Board is precluded from considering additional relevant factors. [Citation.] *Reference to the statutory criteria, in conjunction with the requirement that the Board's opinions be written and set forth the facts and reasons for its decision [citation] insures that consideration of those criteria is undertaken by the Board, provides guidelines to govern the conduct of those affected by the Act, and facilitates meaningful judicial review.*" (Emphasis added.) 73 Ill. 2d at 233-34, 383 N.E.2d at 151.

Further, the supreme court explained:

"As to technological practicability, *we believe the legislature's use of the word 'unreasonable' in the statute clearly places the burden on the Agency to come forward with evidence that emission reduction is practicable.* [Citations.] However, the lack of available technology is not an absolute defense to a claim of air pollution but rather is *one of the factors to be considered by the Board.*" (Emphasis added.) 73 Ill. 2d at 237, 383 N.E.2d at 153.

The supreme court continued, "our responsibility, as was that of the appellate court, is to evaluate all of the evidence on the record in the

context of the section 33 criteria to determine whether the Board's findings are contrary to the manifest weight of the evidence." 73 Ill. 2d at 234, 383 N.E.2d at 151. Likewise, in *City of Waukegan v. Pollution Control Board*, 57 Ill. 2d 170, 182-83, 311 N.E.2d 146, 152 (1974), our supreme court concluded that section 33(c) provides guidelines to the Board and protection against arbitrariness by the Board in making its determinations.

■ The Act's express language directs the Board to consider the section 33(c) factors in making its determinations. Further, section 33 is included in the enforcement section of the Act, which describes the procedures that the Agency and the Board are to follow from investigation of an alleged violation through hearings and determinations in a proceeding. We find no evidence in the statute's language or in the surrounding provisions that leads this court to conclude that the language is intended to apply to actions brought in the circuit court. Where it is clear from the statute's language that the legislature did not include such a requirement, we will not find such a requirement. Additionally, our supreme court's construction of the Act likewise addresses only Board actions. We agree with the first district's conclusion in *Environmental Protection Agency v. Fitz-Mar, Inc.*, 178 Ill. App. 3d 555, 533 N.E.2d 524 (1988), that section 33(c) applies to Board hearings only. As the court therein stated:

> "Section 33(c) addresses hearings before the Board only and has no bearing on plaintiffs' complaint and motion for injunctive relief. *** [S]ection 33(c)'s specificity arises from the composition of the Board itself; its members are 'technically qualified' individuals only and not required to have any legal training. [Citation.] The guidance provided by section 33(c) is intended to prevent arbitrary Board decisions. [Citation.] No such considerations are needed to guide the circuit court." *Fitz-Mar, Inc.*, 178 Ill. App. 3d at 563, 533 N.E.2d at 529.

We recognize that the *Fitz-Mar* court was addressing a water pollution claim that did not include a reasonableness determination; however, the court's interpretation of the Act correctly follows rules of statutory construction and case precedent. We do not answer whether section 33(c) factors must be pled before the Board. We only answer the question certified on interlocutory appeal. Accordingly, in answering the certified question, this court concludes that the State is not required to plead technological practicability and economic feasibility in an action brought for injunctive relief brought in the circuit court.

## CONCLUSION

In sum, where the language of the statute clearly and unambiguously requires only that the Board consider section 33(c) factors in

making its determinations, this court will not add language that the legislature did not include. Accordingly, we conclude that in an action brought in the circuit court alleging a section 9(a) violation the State is not required to allege facts regarding technological practicability and economic feasibility.

Affirmed.

HOLDRIDGE, P.J., and HOMER, J., concur.