2008 ME 124

**John KNUTSON**

v.

**DEPARTMENT OF SECRETARY OF STATE and Herbert J. Hoffman.**

Supreme Judicial Court of Maine.

Argued: July 24, 2008.

Decided: July 28, 2008.

Order Staying Mandate Aug. 20, 2008.

---

Daniel W. Walker, Esq. (orally), Preti, Flaherty, Beliveau & Pachios, LLC, Augusta, ME, for John Knutson.

G. Steven Rowe, Attorney General, Phyllis Gardiner, Asst. Atty. Gen. (orally), Office of Attorney General, Augusta, ME, for the Secretary of State.

John H. Branson, Esq. (orally), Portland, ME, for Herbert J. Hoffman.

Panel: SAUFLEY, C.J., and CLIFFORD, SILVER, MEAD, and GORMAN, JJ.

SAUFLEY, C.J.

[¶ 1] We are presented with two questions in this challenge by John Knutson to the potential nonparty candidacy of Herbert J. Hoffman for the office of United States Senator. Both are questions of first impression.

[¶ 2] The first question is as follows: when petitions in support of a prospective candidate are circulated for signatures, must the circulator have direct personal contact with potential signors and observe the signatures, or is it sufficient that the circulator be in some unspecified proximity to signors? The Secretary of State concluded, pursuant to 21–A M.R.S. § 354(7)(A) (2007), that the circulator must be personally involved and observe the signatures. We agree.

[¶ 3] The second question is as follows: if the circulator has misunderstood this obligation, but only one specific signature on each affected petition has been proved to have been acquired without the circulator's direct observation, is the appropriate remedy to strike the entire petition, or to strike only the invalid signature? We conclude that the plain language of the statute requires that each of the three petitions be stricken in their entirety, and, thus, we must vacate the judgment of the Superior Court affirming the Secretary's determination that the three petitions were valid.

## I. BACKGROUND

[¶ 4] Hoffman is a prospective nonparty candidate for the office of United States

Senator.[1] In order to be placed on the ballot, he was required to present to the Secretary of State 4,000 valid signatures on appropriately circulated petitions, pursuant to 21–A M.R.S. § 354(5)(C) (2007). Hoffman was assisted in his signature gathering effort by approximately forty to forty-five people. Many of these individuals swore oaths as petition circulators, including Hoffman himself. Hoffman also received assistance from his daughter and another individual in collecting signatures on at least three petitions that Hoffman personally circulated.

[¶ 5] Hoffman presented more than 4,000 signatures to the Secretary within the time required by statute. Following a challenge by John Knutson both to multiple signatures and whole petitions, the Secretary found that certain signatures were not valid.[2] Among the signatures invalidated by the Secretary were three on petitions that Hoffman personally signed as circulator that were not collected within Hoffman's personal and visual oversight.[3] The Secretary concluded that 21–A M.R.S. § 354(7)(A), which requires voters to sign in the circulator's "presence," requires both "physical presence" and "awareness," and that the circulator must not be "too far away to see the voters sign their names." Accordingly, the Secretary invalidated three of the challenged signatures, each on a separate petition, based on the factual finding that the voters signed the petitions outside the circulator's presence. Beyond those three signatures, however, the Secretary found that Knutson had failed to prove that any other specific signatures suffered from that particular defect. The Secretary rejected Knutson's argument that the three petitions should be entirely voided because they contained invalid signatures, that is, signatures that had not been observed by the circulator.

[¶ 6] Ultimately, the Secretary determined that Hoffman had presented 4,112 signatures, including seventy-four signatures that were determined by the Secretary to be invalid, leaving 4,038 valid signatures, a sufficient number for the nomination of Hoffman to the Senate candidacy.

[¶ 7] Knutson appealed the Secretary's decision to the Superior Court, pursuant to M.R. Civ. P. 80B and 21–A M.R.S. § 356(2)(D) (2007), urging the court to conclude that Hoffman's oath was not in compliance with section 354(7)(A) because

1. The facts are taken from the transcript of the administrative hearing and from the findings of the hearing officer adopted by the Secretary of State. The factual findings of the Secretary are not challenged.

2. The Secretary of State appointed a hearing officer who heard testimony and argument, made factual findings, and presented a recommendation to the Secretary. The Secretary ultimately adopted the factual findings and recommendations of the hearing officer in their entirety.

3. One of these three petitions (# 285) was signed by a Portland resident, Herbert Adams, who signed the petition at a human rights rally held in Portland. Adams signed the petition after having been presented with it by a man who was not Hoffman. Adams knew that the man who presented Adams with the petition was not Hoffman because a photo of Hoffman had been distributed to Adams at the time he signed the petition. A second petition (# 257) was signed by another Portland resident, Daniel Flack. Flack had been presented with the petition by a woman who identified herself as Hoffman's daughter. Flack did not observe anyone else near her at the time he signed the petition. John Woods, an attendee at a Camp Wellstone campaign training program, signed a third petition (# 44). Woods had been presented the petition by Hoffman's daughter and signed it at her request. Although Hoffman was only about four to six feet from Woods at the time Woods signed the petition, Hoffman was engaged in conversation with another individual, not observing Woods's signature.

Hoffman could not accurately aver that the three signatures had been provided in his presence as required by 21–A M.R.S. § 354(7)(A), and, therefore, that each of the three petitions must be declared void. If those petitions were voided, Hoffman would have insufficient signatures to be placed on the ballot.[4] Following argument, the Superior Court (Kennebec County, *Marden, J.*) affirmed the decision of the Secretary. By statute, we are required to render our opinion within fourteen days of the Superior Court's decision, *see* 21–A M.R.S. § 356(2)(E) (2007).

## II. DISCUSSION

### A. Standard of Review

[¶ 8] Because the Superior Court acted in an appellate capacity when it considered this matter, we review the decision of the Secretary directly, reviewing for findings not supported by the evidence, errors of law, or abuse of discretion, *see Palesky v. Secretary of State*, 1998 ME 103, ¶ 9, 711 A.2d 129, 132 (citing *Maine Bankers Ass'n v. Bureau of Banking*, 684 A.2d 1304, 1305–06 (Me.1996)). Here, the Secretary's factual findings are not challenged, and the only issues presented relate to the application of Maine's election laws.

[¶ 9] In construing Maine statutes, our primary purpose is to give effect to the intent of the Legislature. *Arsenault v. Sec'y of State*, 2006 ME 111, ¶ 11, 905 A.2d 285, 287–88. We first effectuate the plain language of the statute. If the language of the statute is ambiguous, we defer to the Secretary's interpretation if that interpretation is reasonable. *Id.*

### B. Signatures in the "Presence" of the Circulator

[¶ 10] The term "presence" is ambiguous, and, therefore, the first issue we consider is whether the Secretary correctly determined that the three invalidated signatures were signed outside the "presence" of Hoffman, the circulator. If "presence" means only proximity, and the petitions were signed in Hoffman's proximity, as he contends, then he complied with 21–A M.R.S. § 354(7)(A), his oath was accurate, and our analysis would end.

[¶ 11] The operative law, 21–A M.R.S. § 354(7)(A) provides:

> 7. **Certification of petitions.** A nomination petition shall be verified and certified as follows.
>
> A. The circulator of a nomination petition shall verify by oath or affirmation before a notary public or other person authorized by law to administer oaths or affirmations that *all of the signatures to the petition were made in the circulator's presence* and that to the best of the circulator's knowledge and belief each signature is the signature of the person whose name it purports to be; each signature authorized under section 153–A was made by the authorized signer in the presence and at the direction of the voter; and each person is a resident of the electoral division named in the petition.

(Emphasis added.) This requirement finds its foundation in the Maine Constitution, which, in almost identical language, requires that the circulator of a petition swear an oath verifying that each of the

---

**4.** The parties report that, if each of the three petitions containing an invalidly obtained signature must be vacated in their entirety, the total number of valid signatures submitted by Hoffman would be 3,929, not enough to qualify for placement of his name on the ballot.

signatures was made in his presence. ME. CONST. art. IV, pt. 3, § 20.[5]

[¶ 12] Construing the language of the statute, the Secretary concluded that "presence," requires both "physical proximity" and "awareness." In so ruling, the Secretary recognized the absence of a statutory definition, and appropriately referred to the context of the provision at issue, which requires the circulator to take an oath that "each signature is the signature of the person whose name it purports to be" and that each signatory "is a resident of the electoral division named in the petition." 21-A M.R.S. § 354(7)(A). As the Secretary concluded, "it is not enough for a circulator to be in the general area where signatures are gathered. If he is too far away to see the voters sign their names, then he also cannot verify that each signature is the signature of the person whose name it purports to be."

[¶ 13] This analysis is eminently sensible, and not directly challenged by any party. We conclude that the Secretary's construction of section 354(7)(A) has the benefit of being both reasonable, thus, requiring our deference, and correct. Accordingly, the Secretary did not err in concluding that (1) "in the presence of the circulator" means under the direct observation of that circulator, and (2) three petitions contained signatures that must be invalidated because they were not collected in the presence of the circulator.

### C. Remedy

[¶ 14] The next question is whether Hoffman's misunderstanding of his responsibility as a circulator to be present when signatures were collected, combined with the consequent invalidation of three signatures on three separate petitions, requires the voiding of all three petitions.

[¶ 15] Hoffman, as the circulator of the three petitions, took an oath averring "that all of the signatures to the petition were made in the circulator's presence." 21-A M.R.S. § 354(7)(A). His oath was inaccurate. Three specific signatures were gathered outside of his presence. Hoffman himself also conceded at the hearing that: (1) there were times when he used the assistance of another person to collect the signatures for which he was the circulator; (2) his daughter used a separate clipboard to collect signatures when he was the circulator; (3) he thought that being within ten or fifteen feet of his noncirculator "assistant" was acceptable; (4) another individual gathered a few signatures while he, Hoffman, was engaged in dealing with other responsibilities; and (5) he "might have" left his daughter alone for a brief period to collect signatures while he was otherwise engaged. Thus, there is no

---

5. ME. CONST. art. IV, pt. 3, § 20 reads as follows:

"written petition" means one or more petitions written or printed, or partly written and partly printed, with the original signatures of the petitioners attached, verified as to the authenticity of the signatures by the oath of the circulator *that all of the signatures to the petition were made in the presence of the circulator* and that to the best of the circulator's knowledge and belief each signature is the signature of the person whose name it purports to be, and accompanied by the certificate of the official authorized by law *to maintain the voting list* or to certify signatures on petitions for voters on the voting list of the city, town or plantation in which the petitioners reside that their names appear on the voting list of the city, town or plantation of the official as qualified to vote for Governor. The oath of the circulator must be sworn to in the presence of a person authorized by law to administer oaths.

(Emphasis added.)

Although section 20 does not explicitly reference the nomination petition process at issue, it is clear that the Legislature drew the language of 21-A M.R.S. § 354(7)(A) (2007) from this constitutional definition.

question that Hoffman could not take an accurate oath that all the signatures on his petitions were made in his presence.[6]

[¶ 16] The Secretary found, however, that the challenger failed to prove which, if any, other specific signatures were made outside the presence of the circulator, leaving only the three identified individuals as having signed outside the circulator's presence. On that basis, the Secretary concluded that it was necessary to invalidate only the three signatures that had not been gathered in accordance with the requirements of subsection (7), and that the inaccuracy of the circulator's oath did not require that the three petitions be voided in their entirety.

[¶ 17] The Secretary has previously construed 21–A M.R.S. § 354 (2007) in the context of a 2004 petition dispute regarding a circulator's erroneous oath. In that proceeding, the Secretary concluded that "[i]n order to void the entire candidate petition, the defect in the circulator's oath should be something that undercuts the veracity of the oath as applied to the entire petition." *Bailey v. Turtle*, Me. Dep't of Sec'y of State (Me.2004). The Secretary adopted this construction despite the circulator's admission, in that case, that his oath inaccurately stated that *all* the signatures had been made by "the person whose name it purports to be." 21–A M.R.S. § 354(7)(A).

[¶ 18] We accept the Secretary's factual findings, and, because the Secretary has previously construed the statute, if we find an ambiguity in the statute, we will defer to that construction if we determine that the Secretary's construction is reasonable.

*Melanson v. Sec'y of State,* 2004 ME 127, ¶ 8, 861 A.2d 641, 644.

[¶ 19] We, therefore, examine the statute to determine first whether it is ambiguous. The Legislature has set out clear consequences for failure to comply with the statutory requirements:

**Petition void.** A nomination petition which does not meet the requirements of this section is void.

21–A M.R.S. § 354(9).

[¶ 20] This language is unambiguous.[7] When a petition is tendered to the Secretary that does not meet the requirements of the petition laws, it must be voided. The Legislature has not conditioned the application of this section on the presence of fraud, nor has it created any exception for a failure to comply that is done in good faith. The Legislature could certainly have limited the remedies to violations that were founded on fraud and dishonesty, but it has not done so.

 [¶ 21] Thus, the consequence here, where the circulator misunderstood his obligations and tendered three petitions, each containing a signature that was not gathered in his presence, must be to void the three petitions, unless subsection (9) does not apply, or some other statute or constitutional provision prevents the application of the statutory remedy provided in subsection (9). The only statutory exception to the requirement that a failure to comply must void the entire petition is found in the second sentence of subsection (9), regarding errors related to individual signatories that are generally not in the control of the circulator. 21–A M.R.S.

---

6. None of the parties allege that Hoffman's inaccurate oath was a product of fraud.

7. Compare this unambiguous language with the broader authority given to the Secretary of State in the context of reviewing referen-

dum petitions, 21–A M.R.S. § 905(1) (2007) which provides in part: "The Secretary of State shall determine the validity of the petition."

§ 354(9).[8] No party suggests that this limited exception applies here.

[¶ 22] Hoffman and the Secretary present several arguments to avoid the plain result required by law. First, they argue that the statute could be unconstitutional if it voids the remaining signatures. Specifically, the Secretary expresses concern that if section 354(9) is interpreted to require the invalidation of the three contested petitions in their entirety, the associational and voting rights of the signors and of the electorate generally, may be infringed. Long-standing jurisprudence in Maine, however, confirms that voiding petitions that fail to comply with the statute falls well within acceptable constitutional parameters. See Maine Taxpayers Action Network v. Sec'y of State, 2002 ME 64, ¶ 20, 795 A.2d 75, 82; see also Bullock v. Carter, 405 U.S. 134, 145, 92 S.Ct. 849, 31 L.Ed.2d 92 (1972). We do not address the constitutional concern further.

[¶ 23] Hoffman also asserts that the mandate that signatures be obtained in the presence of a circulator is not one of the "requirements" of section 354 that would trigger application of subsection (9). He correctly argues that subsection (9) requires the voiding of a petition only when it "does not meet the requirements of this section." His argument, however, that the circulator's oath and elements verified through that oath are not "requirements" of section 354, must be rejected in the face of the plain and unmistakable language of subsection (7), which requires the circulator to verify, by oath or affirmation, that "all of the signatures to the petition were made in the circulator's presence." 21-A

M.R.S. § 354(7)(A). A circulator's oath is "pivotal" to the circulation process, and "the oath is of such importance that the constitution requires that it be sworn in the presence of a notary public...." Maine Taxpayers Action Network, 2002 ME 64, ¶ 13, 795 A.2d at 80. Hoffman's argument, therefore, that the oath is not within the "requirements" of section 354, simply fails.

[¶ 24] The Secretary and Hoffman also urge us to conclude that the making of an honest oath is all that is required by subsection (7). Because, according to the Secretary, the oath was inaccurately, but honestly taken, the circulator did not "fail to comply," and, therefore, subsection (9) does not apply. This construction is inconsistent with the language of subsections (7) and (9). Nothing in the language of either subsection makes exceptions for actual, but honest, failures to comply. The importance of compliance with the petition requirements is central to a credible nomination process. Whether the errors are made in good faith, or are the product of fraud or dishonesty, the law requires the invalidation of the petition upon demonstration of noncompliance, regardless of scienter. 21-A M.R.S. § 354(9).

[¶ 25] Hoffman nonetheless contends that fraud and dishonesty have been present whenever full petitions have been voided in other states. Because no fraud is present here, he asserts that the petitions should not be stricken in full. Certainly courts and election administrators have been firm in voiding petitions where fraud is present. See Maine Taxpayers Action Network, 2002 ME 64, 795 A.2d 75.[9] Thus,

---

8. The second sentence of 21-A M.R.S. § 354(9) provides "If a voter or circulator fails to comply with this section in signing or printing the voter's name and address, that voter's name may not be counted, but the petition is otherwise valid."

9. See also, Citizens Comm. for the D.C. Video Lottery Terminal Initiative v. D.C. Bd. of Elections & Ethics, 860 A.2d 813, 816–17 (D.C.App.2004) (holding Board had authority to exclude entire petitions where evidence showed pervasive pattern of fraud, forgery,

the presence of fraud will usually result in the invalidation of petitions in their entirety.

[¶ 26] It does not follow, however, that the *absence* of fraud precludes the possibility that entire petitions may be stricken.[10] The analytical fallacy in Hoffman's argument is apparent. The fact that the *presence* of fraud will invalidate petitions wholesale does not mean that the *absence* of fraud forecloses that remedy. More important, the Maine Legislature has never identified the presence of fraud as the *sine qua non* for invalidating a petition. Thus, the presence of fraud is not a necessary predicate to the operation of subsection (9).

[¶ 27] Finally, we address the Secretary's earlier construction of subsection (9), that "in order to void the entire candidate petition, the defect in the circulator's oath should be something that undercuts the veracity of the oath as applied to the entire petition." The Legislature could determine such a policy to be reasonable, but it has not done so, instead, it has declared in straightforward language that a petition is void if it does not comply with section 354. Although the Secretary's *policy* decision, attempting to save petitions in certain circumstances, may not be unreasonable, it is the Legislature that weighs the competing considerations and sets the policy. The plain language of the statute must be effectuated.

[¶ 28] We are bound by the Legislature's choice of language: "[a] nomination petition which does not meet the requirements of this section is void." 21–A M.R.S. § 354(9). The three petitions at issue do not meet the requirements of section 354 because they contain circulator's oaths that are inaccurate as to a critical component of compliance with section 354, that is, contact with, and signatures by, *all* voters in the "presence" of the circulator. The absence of fraud does not change this result. The statute plainly compels a decision contrary to that of the Secretary of State, and the petitions at issue are void.

The entry is:

Judgment of the Superior Court vacated. Remanded to the Superior Court for entry of judgment vacating the Secretary of State's decision, and for further action consistent with this opinion.

## ORDER STAYING MANDATE

[¶ 1] Pending before the Court[1] is Herbert Hoffman's motion for stay of the mandate in the above-captioned matter. Hoffman seeks the stay in order to obtain a review of our opinion by the United States Supreme Court. We have received Hoff-

---

10. *See, e.g., Williams v. Butler*, 35 Ill.App.3d 532, 341 N.E.2d 394, 396–98 (1976) (affirming invalidation of all signatures gathered by objected to individuals due to failure to comply with statutory requirement of signing oath in front of notary public); *State ex rel Zahneis v. Bd. of Elections of Hamilton County*, 27 Ohio App.2d 233, 273 N.E.2d 797 (1971) (invalidating entire petition rather than only the two signatures that were not properly witnessed).

1. The justices sitting on this motion are those sitting in the original opinion: Saufley, C.J., and Clifford, Silver, Mead, and Gorman, JJ.

and other improprieties permeated the circulation process that a particular group gathering signatures used); *Montanans for Justice v. State*, 334 Mont. 237, 146 P.3d 759, 777 (2006) (considering totality of evidence and circumstances affirmed invalidation of all petitions signed by out-of-state gatherers due to failure to comply with statute, deceptive practices, and misrepresentation); *Brousseau v. Fitzgerald*, 138 Ariz. 453, 675 P.2d 713, 715–16 (1984) (voiding petitions containing false certifications because they destroy a safeguard of the electoral process).

man's motion; the opposition of John Knutson; an affidavit from Julie L. Flynn, Deputy Secretary of State; and Hoffman's supplemental statement in support of his motion for a stay.

[¶ 2] By rule, the Court's mandate would have issued fourteen days following the certification of the opinion, in this case, on August 11, 2008. M.R.App. P. 14(a)(2). We have held the mandate pending receipt of each party's position on Hoffman's motion. *Id.* Hoffman indicates that he has filed a simultaneous motion for stay with a Justice of the U.S. Supreme Court, *see* 28 U.S.C.S. § 2101(f) (Law Co-op. 1992),[2] and that he intends to file an expedited petition for certiorari.

[¶ 3] We would ordinarily deny the motion for stay because, as briefly addressed below, Hoffman has not established a reasonable likelihood of success in obtaining review and prevailing in his appeal to the U.S. Supreme Court. In order, however, to allow Hoffman to press his requests in the U.S. Supreme Court, we will accommodate Hoffman's request, in part.

## LIKELIHOOD OF SUCCESS ON THE MERITS

[¶ 4] A central component of any request for stay in this context is the demonstration of a reasonable likelihood of success in obtaining review and prevailing on a federal constitutional challenge. *Cf. Ingraham v. Univ. of Me. at Orono,* 441 A.2d 691, 693 (Me.1982) (standard for injunctive relief); *Rostker,* 448 U.S. at 1308, 101 S.Ct. 1. The constitutional challenge presented by Hoffman is not entirely clear.

[¶ 5] Hoffman does not now appear to challenge the Maine law that requires circulators to be physically present and to observe the signatures of the voters.[3] *See* 21–A M.R.S. § 354(7)(A) (2007). This is not surprising given that the straightforward requirement that the circulator be "present" when the voter signs the petition has never been held to be unduly burdensome. Indeed, much of the jurisprudence in petition disputes has focused on supporting and protecting the direct communication between the circulator and the

---

2. The U.S. Supreme Court has made clear the appropriate standard for granting a motion to stay under these circumstances:

 Relief from a single Justice is appropriate only in those extraordinary cases where the applicant is able to rebut the presumption that the decisions below—both on the merits and on the proper interim disposition of the case—are correct.... [T]his can be accomplished only if a four-part showing is made. First, it must be established that there is a "reasonable probability" that four Justices will consider the issue sufficiently meritorious to grant certiorari.... Second, the applicant must persuade [the Justice] that there is a fair prospect that a majority of the Court will conclude that the decision below was erroneous.... Third, there must be a demonstration that irreparable harm is likely to result from the denial of a stay. And fourth, in a close case it may be appropriate to "balance the equities"—to explore the relative harms to ap-

 plicant and respondent, as well as the interests of the public at large.
 *Rostker v. Goldberg,* 448 U.S. 1306, 1308, 101 S.Ct. 1, 65 L.Ed.2d 1098 (1980) (Brennan, J., in chambers) (citations omitted).

3. Hoffman assumed that being in the vicinity was sufficient, and, with regard to the three petitions at issue here, he enlisted assistants who were not circulators to carry additional clipboards with petitions and to interact with the voters. In some but not all instances, Hoffman was close enough to see that voters were signing the petitions held by his assistants. The challengers demonstrated that at least one voter from each petition did not sign in Hoffman's presence. Hoffman himself testified that because he did not understand the requirement of "presence" at the time that he circulated the three petitions, signatures were likely collected by the assistants outside of his presence on several occasions, and he did not know how many signatures were collected in that fashion.

voter. *See, e.g., Meyer v. Grant,* 486 U.S. 414, 424, 108 S.Ct. 1886, 100 L.Ed.2d 425 (1988). To encourage that interaction, limitations on the numbers of, or characteristics of, circulators have been struck down as overly burdensome on political expression. *See id.* at 428, 108 S.Ct. 1886; *Buckley v. Am. Constitutional Law Found., Inc.,* 525 U.S. 182, 191–205, 119 S.Ct. 636, 142 L.Ed.2d 599 (1999) (invalidating Colorado statutory provisions requiring that circulators be registered voters and wear identification badges when collecting signatures).

[¶ 6] Because the U.S. Supreme Court has deemed communication between the circulator and the voter to be at the very heart of this political process, it has struck down ballot initiative restrictions that "significantly inhibit communication with voters about proposed political change." *Buckley,* 525 U.S. at 192, 119 S.Ct. 636. Thus, there is little likelihood that Hoffman would prevail in setting aside the Maine requirement of circulator and voter interaction, expressed in the provision requiring the circulator's "presence," and we do not read his papers as presenting that argument.

[¶ 7] Moreover, Hoffman now says that he is "*not* seeking review of this Court's determination that Maine law mandates the voiding of an entire petition in the event that the circulator's oath, although made honestly and in good faith, is later found to be 'inaccurate' with regard to a single signature." *See* 21–A M.R.S. § 354(9) (2007). Rather, Hoffman appears to be making the argument that his mistake should not affect the voters who signed his petition; specifically, he questions whether the application of section 354(7)(A) and (9), as first explicitly interpreted by "*any court or agency on July 28 [2008]*" (emphasis in original), violates the First Amendment rights of Maine voters.

[¶ 8] We read the current formulation of his argument to be this: the application of the "presence" requirement to void in full petitions presented by a circulator who did not understand that requirement violates the First Amendment rights of all voters who signed his petitions, whether or not they signed in his presence.[4] It is, perhaps, another way of presenting his prior argument, that is, that the absence of fraud precludes the application of section 354(9) to void entire petitions. All parties agreed that no fraud was present.

[¶ 9] We concluded that, regardless of the absence of fraud, Hoffman's failure to comply with the circulator's responsibilities with regard to the three petitions (out of approximately 355) placed the petitions squarely within the plain language of Maine law, 21–A M.R.S. § 354(9): "[a] nomination petition which does not meet the requirements of this section is void." *See Knutson v. Sec'y of State,* 2008 ME 124, ¶ 28, 954 A.2d 1054, 1060.

[¶ 10] Because the presence of fraud is neither statutorily nor constitutionally required before a reasonable petition requirement can be enforced, *see Anderson v. Celebrezze,* 460 U.S. 780, 788, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983), we conclude that Hoffman is not likely to succeed in his argument that the nonfraudulent quality of his mistake precludes the application of section 354(9) to void the three petitions at issue.

---

**4.** Hoffman has conceded that he did not understand his responsibilities and that he was not always present when voters signed the petitions. Because he did not understand the requirement, he does not know how many voters signed outside of his presence, and his circulator's oath, averring to each of the required statement facts set out at 21–A M.R.S. § 354(7)(A), was inaccurate on each of the three petitions.

[¶ 11] Our conclusion finds support in the U.S. Supreme Court's consistent holding that "States allowing ballot initiatives have considerable leeway to protect the integrity and reliability of the initiative process, as they have with the election process generally." *Buckley,* 525 U.S. at 191, 119 S.Ct. 636. The Court has "upheld generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself." *Anderson,* 460 U.S. at 788 n. 9, 103 S.Ct. 1564.

[¶ 12] The requirement that the circulator interact with and observe the signature of the voter is just such a part of the electoral process. It applies to all circulators; it does not restrict the characteristics or number of circulators; it does not affect one candidate differently than others; it does not interfere with the communication between circulator and voter. *See Buckley,* 525 U.S. at 192, 119 S.Ct. 636. Applying any level of scrutiny, the Maine Legislature's determination that the failure to comply with such a fundamental requirement of law should result in voiding the defective petition in full is neither unduly burdensome, nor does it create a hindrance to "political conversations and the exchange of ideas." *Id.*

## CONCLUSION AND ORDER

[¶ 13] The failure to comply with the reasonable circulation requirement of "presence," regardless of the circulator's motivation, eliminates a key component of the petition process: the circulator's minimal assurance that the voter is who he says he is, and that the voter is a resident in the electoral division named in the petition. 21–A M.R.S. § 354(7)(A). The absence of fraud does not ameliorate that deficit, and the enforcement of section 354(9) is not likely to be found to impermissibly infringe on the voters' First Amendment rights. Hoffman has failed to demonstrate a reasonable likelihood of success on appeal.

[¶ 14] Nonetheless, because safeguarding the protections of the First Amendment is of paramount importance, and because, with the helpful information provided by the Secretary of State, we can partially accommodate Hoffman's request for a stay in order to allow him to determine whether the Supreme Court will intervene to stay our mandate, we will stay the mandate for a finite period. In order to provide the Secretary of State a minimum of two full business days (in the absence of a stay by the U.S. Supreme Court) before the deadline for the creation of the final ballot templates, we stay the issuance of the mandate for one week.

[¶ 15] It is hereby ORDERED that the mandate shall issue on Wednesday, August 27, 2008, at 4:00 P.M., and no further stay will be allowed, unless the U.S. Supreme Court orders the stay of the mandate in this matter or the Clerk of the Law Court receives an Order granting the petition for writ of certiorari, before August 27, 2008, at 4:00 P.M. *See* M.R.App. P. 14(a)(2).

/s/ Leigh I. Saufley, Chief Justice

For SAUFLEY, C.J., and CLIFFORD and GORMAN, JJ.

## STATEMENT OF NONCONCURRENCE

MEAD and SILVER, JJ.

[¶ 16] We would deny Hoffman's motion for stay. It is incumbent upon a party seeking temporary relief from a judgment of the Court to demonstrate an appropriate basis and need for the granting of such extraordinary relief. At the heart of such a showing is proof that the stay would actually accomplish an affirmative result.

[¶ 17] As noted in the Court's granting of Hoffman's motion, it is unlikely that Hoffman will succeed in (1) obtaining a writ of certiorari from the U.S. Supreme Court, and (2) ultimately demonstrating that this Court construed an indisputably constitutional statute in an unconstitutional manner. More immediate, however, is the fact that any relief from the U.S. Supreme Court would almost certainly arrive well after the election and the administrative processes necessary to accomplish it. The short-term stay granted by this Court, therefore, would not likely create a procedural framework for any meaningful result for Hoffman, such as having his name appear on the ballot. Furthermore, Hoffman would likely be able to obtain a ruling on these issues regardless of whether a stay is granted, because this case would appear to fall within an exception to the mootness doctrine. *See FEC v. Wisc. Right to Life, Inc.*, 551 U.S. ——, ——, 127 S.Ct. 2652, 2662, 168 L.Ed.2d 329 (2007).