STATE OF MAINE                                        SUPERIOR COURT
CUMBERLAND, ss.                                       CIVIL ACTION
                                                      DOCKET NO. AP-21-13


CHRISTOPHER J. CAIAZZO,

            Petitioner

      v.

SHENNA BELLOWS, in her capacity of          DECISION AND ORDER
Secretary of State for the State of Maine

            Respondent

      and

THOMAS B. SAVIELLO,

            Intervenor


      The matter before the court is petitioner Christopher J. Caiazzo's ("petitioner") appeal of

respondent Secretary of State Shenna Bellows's ("Secretary") May 24, 2021 decision to write a

single ballot question for the direct initiative entitled "An Act To Require Legislative Approval of

Certain Transmission Lines, Require Legislative Approval of Certain Transmission Lines and

Facilities and Other Projects on Public Reserved Lands and Prohibit the Construction of Certain

Transmission Lines in the Upper Kennebec Region" ("initiative"). Intervenor Thomas B. Saviello

("intervenor") has also submitted a brief in support of the Secretary's decision. For the following

reasons, the decision will be affirmed.

**I. Background**

      The initiative at issue arises out of an application submitted to the Secretary by intervenor

on September 16, 2020. (R. 1.) The Secretary made non-substantive changes to the proposed

legislation so that it would conform to legislative drafting standards. (R. 5.) Intervenor consented

1

to all changes made by the Secretary. (R. 9.) The Secretary's office then prepared a petition form to be circulated to voters. (R. 10-13.)

The petition circulated to voters for signature described a single Act entitled "An Act To Require Legislative Approval of Certain Transmission Lines, Require Legislative Approval of Certain Transmission Lines and Facilities and Other Projects on Public Reserved Lands and Prohibit the Construction of Certain Transmission Lines in the Upper Kennebec Region." (R. 10-13.) The bill proposed in the initiative has six sections which make several changes to current statutes. (R. 10-13.)

First, the initiative would amend 12 M.R.S. § 1852(4) to require legislative approval of leases of public reserved lands by the Bureau of Parks and Lands ("BPL") for a variety of uses. (R. 7.) Section 1 would amend § 1852(4) to require that any lease of public reserved land by the BPL for transmission lines and facilities, landing strips, pipelines and railroad tracks is deemed to substantially alter the use of the land within the meaning of article IX, section 23 of the Maine Constitution and therefore requires approval by a 2/3 vote of all members elected to each House of the Legislature. (R. 7;) Me. Const. art. IX, § 23. This requirement would be retroactive to September 16, 2014. (R. 7.)

Second, the initiative would amend 35-A M.R.S. §§ 3131-32 to remove references to a repealed statute that governed "energy infrastructure corridors." (*Id.*) These references would be removed by Sections 2 and 3 of the initiative. (*Id.*)

Third, Section 4 of the initiative would amend 35-A M.R.S. § 3132 to require legislative approval for construction of "high-impact electric transmission lines." (*Id.*) Section 4 would further require that high-impact electric transmission lines that cross or utilize public lands be deemed to substantially alter the land and therefore require a 2/3 vote of all members elected to

2

each House of the Legislature to be approved. (R. 7-8.) Section 6 would make this amendment retroactive to September 16, 2020. (R. 8.)

Fourth, Section 5 of the initiative would amend 35-A M.R.S. § 3132 to ban construction of high-impact electric transmission lines in a region referred to as the "Upper Kennebec Region." (R. 8.) Section 5 would define the "Upper Kennebec Region" as:

> the approximately 43,300 acres of land located between the Town of Bingham and Wyman Lake, north along the Old Canada Road, Route 201, to the Canadian border, and eastward from the Town of Jackman to encompass Long Pond and westward to the Canadian border, in Somerset County and Franklin County.

(R. 8.) Section 6 would make this amendment retroactive to September 16, 2020. (R. 8.)

The initiative petition was submitted to the Office of the Secretary of State on January 21, 2021. (R. 14.) On February 22, 2021, the Secretary issued a written decision determining the validity of the petition, deciding that 80,506 Maine voters validly signed the petition. (R. 14-15.) As this exceeded the 63,067 signatures required, the Secretary concluded that the petition was valid. (R. 15.) This decision was not appealed.

The initiated bill was then presented to the first regular session of the 130th Legislature. (R. 16.) The Legislature adjourned *sine die* on March 30, 2021 without enacting the proposed measure without change. (R. 16.) Governor Janet Mills issued a proclamation requiring that an election be held on November 2, 2021 for a referendum vote on the initiative. (R. 16.)

On April 13, 2021, the Secretary released proposed language for the ballot question on the initiative for public comment. (R. 17.) The draft version of the question read as follows:

> Do you want to ban the construction of high-impact electric transmission lines in the Upper Kennebec Region and to require the Legislature to vote on other such projects in Maine retroactive to 2014, with a two-thirds vote required if a project uses public lands?"

(R. 17.) The public submitted 119 comments, some in favor of the proposed wording and some against. (R. 18-189.) Petitioner submitted a comment suggesting that the Secretary split the initiative into multiple questions. (R. 33-35.) Petitioner suggested that the initiative involves three issues that could be split into three separate questions without negating the intent of the proponents of the initiative, which he believed was "to block the construction of the New England Energy Connect transmission project."[1] (R. 35.) Petitioner suggested that the ballot question be split into the following three questions:

> Do you want to require retroactive to 2014 that the Legislative [sic] approve by a two-thirds vote any lease or conveyance of public reserved lands to be used for transmission lines and facilities, landing strips, pipelines or railroad tracks?

> Do you want to require retroactive to 2020 the Legislature to approve the construction of any high impact transmission lines in Maine, with a two-thirds vote required if a project crosses public lands?

> Do you want to ban retroactive to 2020 the construction of high-impact electric transmission lines in the Upper Kennebec Region?

(R. 35.) Petitioner argued that provisions of the initiative associated with any one of these questions, if passed, would interfere with the construction of the NECEC project. (R. 35.)

On May 24, 2021, the Secretary released the final wording for the ballot question associated with the initiative. The Secretary determined that the ballot question will be worded as follows:

> Do you want to ban the construction of high-impact electric transmission lines in the Upper Kennebec Region and to require the Legislature to approve all other such projects anywhere in Maine, both retroactively to 2020, and to require the Legislature, retroactively to 2014, to approve by a two-thirds vote such projects using public land?

---

[1] The New England Clean Energy Connect Project ("NECEC Project") is a high voltage direct current transmission line intended to bring 1,200 megawatts of hydropower electricity from Quebec into the Maine and Northern New England power grid. *See NextEra Energy Resources, LLC v. Pub. Utils. Comm'n,* 2020 ME 34, ¶¶ 1, 3, 227 A.3d 1117. The NECEC project itself is not the subject of this litigation, though the parties agree that one of the goals of the initiative is to block its construction.

(R. 190.) Petitioner timely filed this appeal, claiming that the Secretary erred by failing to split the question into three separate questions as he suggested in his public comment to the draft version of the ballot question.

## II. Standard of Review

21-A M.R.S. § 905(2) (2021) grants any voter who did not sign the application or petition for the direct initiative of legislation the right to appeal the decision of the Secretary of State to approve the petition by commencing an action in the Superior Court. This action is conducted in accordance with M.R. Civ. P. 80C, except as modified by § 905(2). *Id.* § 905(2) further provides:

> In reviewing the decision of the Secretary of State, the court shall determine whether the description of the subject matter is understandable to a reasonable voter reading the question for the first time and will not mislead a reasonable voter who understands the proposed legislation into voting contrary to that voter's wishes.

*Id.* Accordingly, the court is required to "independently determine whether the ballot question is understandable and not misleading." *Olson v. Sec'y of State*, 1997 ME 30, ¶ 4, 689 A.2d 605. In a Rule 80C appeal, the court reviews the Secretary's decision for "findings not supported by the evidence, errors of law, or abuse of discretion." *Knutson v. Dep't of Sec'y of State*, 2008 ME 124, ¶ 8, 954 A.2d 1054. When interpreting a statute on an 80C appeal the court "first effectuate[s] the plain language of the statute." *Id.* ¶ 9. If the language is ambiguous, the court "defer[s] to the Secretary's interpretation if that interpretation is reasonable." *Id.* ¶ 9.

Petitioner has not challenged the Secretary's decision on the grounds that the ballot question was misleading or not understandable. Therefore, the court will proceed under a M.R. Civ. P. 80C standard, as provided by § 905(2).

## III. Discussion

There are two questions presented by this appeal. First, is the Secretary required by 21-A M.R.S. § 906(6)(A) to prepare multiple questions for inclusion on the ballot for a ballot initiative that addresses multiple issues? Second, if the Secretary is so required, was she required to prepare multiple questions in this case?

Intervenor has raised the threshold issue of whether the court has jurisdiction to hear a challenge based on 21-A M.R.S. § 906(6)(A). Intervenor argues that § 905(2) and *Olson*, limit the court's review of the wording of a ballot question to a determination of whether the question is misleading or not understandable. § 905(2) states that any action appealing the language of a ballot question "must be conducted in accordance with Maine Rules of Civil Procedure, Rule 80C, except as modified by this section." § 905(2) modifies M.R. Civ. P. 80C in only one respect: it requires the court "independently determine whether the ballot question is understandable and not misleading." *Olson*, 1997 ME 30, ¶ 4, 689 A.2d 605. Intervenor reads § 905(2) and *Olson* to limit the court's review to *only* this independent determination. This is at odds with the plain language of § 905(2), which clearly states that "except as modified by this section," an appeal under § 905(2) will be conducted in accordance with M.R. Civ. P. 80C. In other words, unless the petitioner is challenging the Secretary's decision on the grounds that the ballot question is misleading or not understandable, the court reviews the decision for "findings not supported by the evidence, errors of law, or abuse of discretion." *Knutson*, 2008 ME 124, ¶ 8, 954 A.2d 1054. The court has jurisdiction and will proceed using a M.R. Civ. P. 80C standard.

## A. Plain Language

Statutory interpretation begins with the plain terms of the statute to determine whether they are ambiguous. *Corinth Pellets, LLC v. Arch Specialty Ins. Co.*, 2021 ME 10, ¶ 21, 246

A.3d 586. Petitioner, intervenor and respondent all argue that 21-A M.R.S. § 906(6)(A) (2021) unambiguously supports their position. § 906(6)(A) provides:

> **A.** The Secretary of State shall advise petitioners that the proper suggested format for an initiative question is a separate question for each issue. In determining whether there is more than one issue, each requiring a separate question, considerations include whether:
>
> > **(1)** A voter would reasonably have different opinions on the different issues;
> >
> > **(2)** Having more than one question would help voters to better understand the subject matter; and
> >
> > **(3)** The questions are severable and can be enacted or rejected separately without negating the intent of the petitioners.

Petitioner argues that the court should read this provision to impose two duties on the Secretary. First, petitioner argues, the Secretary is required to give initiative petitioners notice that the "proper suggested format" for initiative ballot language is a separate question for each issue. (Reply Br. 3.) Petitioner finds this duty in the first sentence of § 906(6)(A). Second, petitioner argues, the Secretary is required to prepare final ballot language with only one issue per question, even if the approved petition does not contain multiple questions. (Reply Br. 15.) Petitioner finds this duty in the use of the word "requiring" in the second sentence of § 906(6)(A).

A voter who wishes to initiate proceedings for a direct initiative of legislation in Maine must first submit a written application to the Secretary of State. 21-A M.R.S. § 901. The Secretary must then "review the proposed law for a direct initiative of legislation within 15 business days after receipt of the application." 21-A M.R.S. § 901(3-A). The Secretary may choose to either reject the application or provide a "first revised draft" of the initiative legislation to the applicant within that time. *Id.* The applicant has the choice to either accept or reject those modifications, and may submit subsequent drafts for review under the same process. *Id.* Once the

7

applicant agrees to the final language of the proposed law, the Secretary proceeds to design the petition form. *Id.* This petition form may then be circulated to voters. *Id.* Petitioner argues that the Secretary is required to advise initiative petitioners of the "proper suggested format" for initiative ballot language during this revision process.

Once initiative petitioners have gathered the necessary signatures and the Legislature adjourns *sine die* without enacting the proposed legislation, the Secretary has 10 business days to give public notice of the proposed ballot question to be submitted to voters during the next election. 21-A M.R.S. § 905-A. After giving notice of the proposed ballot question, the Secretary must provide a 30-day public comment period "for the purpose of receiving comments on the content and form of proposed questions to be placed on the ballot for any pending initiatives." *Id.* After the public comment period closes, the Secretary has 10 days to write the final wording for any pending initiative. *Id.* The Secretary must prepare the ballots for referendum questions in accordance with the provisions in 21-A M.R.S. § 906. Petitioner argues that the Secretary's second duty under § 906(6)(A) is to write the ballot question in such a way as to ensure that each question presents only one issue by applying the factors enumerated in § 906(6)(A).

The plain language of § 906(6)(A) does not support petitioner's reading. The first sentence of § 906(6)(A) reads: "The Secretary of State shall advise petitioners that the proper suggested format for an initiative question is a separate question for each issue." The two key words in this sentence are "advise" and "suggested." The parties agree that the word "advise" means that the only duty created by this sentence is for the Secretary to notify initiative petitioners of the "proper suggested format" of initiative ballot questions. The parties further agree that the term "suggested" has a non-mandatory meaning. The word "suggested" immediately precedes the word "format," which in ordinary English grammar means that

8

"suggested" is acting as an adjective modifying the noun "format." Therefore, the most sensible reading of this sentence is that the statute requires the Secretary to notify initiative petitioners that Maine law prefers initiatives presented to the people in a format of one question per issue as defined by the statutory factors, but that this format is merely "suggested," i.e., non-mandatory.[2]

Petitioner's interpretation of the first sentence of § 906(6)(A) would render the word "suggested" surplusage. Petitioner argues that his interpretation gives full effect to the term "suggested" because the Secretary would not make the final determination on whether the initiative requires multiple questions until later, when she prepares the final language of the ballot question. However, § 906(6)(A) does not state that the Secretary must provide initiative petitioners with suggested *wording* of the initiative, only that she advise them of the "proper suggested *format*," which is "a separate question for each issue." If the format is mandatory, as petitioner suggests, the sentence would read: "The Secretary of State shall advise petitioners that the proper format for an initiative question is a separate question for each issue."

Petitioner argues that the use of the term "requiring" in the second sentence means that the statute must be read as imposing two duties at different stages of the initiative process. The second sentence of § 906(6)(A) begins with the phrase "In determining whether there is more than one issue, each requiring a separate question . . ." This is clearly referring to the "proper suggested format," that is, "a separate question for each issue." The court cannot read the second sentence of § 906(6)(A) in isolation from the first when the second sentence by its plain language is elaborating on the considerations for determining whether there are separate issues in the same

---

[2] The statute does not specify when the Secretary's duty to advise initiative petitioners about the "proper suggested format" of initiative ballot questions arises during the initiative process. However, reading the statutory scheme as a whole, this duty must arise before the Secretary approves the language that will be circulated with the petition, as this is the last stage of the process where initiative petitioners have direct control over the language of the initiative. *See* 21-A M.R.S. § 901.

9

ballot initiative, which the first sentence states is contrary to the "proper suggested format." While it is true that the statute states that each issue requires a separate question, read as an elaboration of the first sentence the only significance of the term "requiring" is to clarify what the Secretary must communicate to the initiative petitioners. In other words, the Secretary must advise initiative petitioners that the proper suggested format for initiative questions is to present each issue as a separate question, and *initiative petitioners* should consider the statutory factors to decide whether their petition requires multiple questions. This language does not, however, suggest that the Secretary is obligated to make this determination herself when she writes the final language for the ballot initiative.

§ 906(6)(A) does not mention the Secretary's obligation to prepare the final ballots. This is a conspicuous absence because §§ 906(6)(B)-(E) specifically concern the final preparation of ballot language. § 906(6)(B) provides: "The Secretary of State shall write the question in a clear, concise and direct manner that describes the subject matter of the people's veto or direct initiative as simply as possible." § 906(6)(C) further requires that "[t]he question for a direct initiative must be phrased so that an affirmative vote is in favor of the direct initiative." § 906(6)(D) adds additional requirements where the Legislature adopts a competing measure, requiring the Secretary to "clearly designate the competing question and legislation as a competing measure and allow voters to indicate whether they support the direct initiative, support the competing measure or reject both." § 906(6)(E) governs ballots where there are multiple direct initiatives on the same general subject, providing that "the Secretary of State shall write the questions in a manner that describes the differences between the initiatives." The fact that § 906(6)(A) requires the Secretary to "advise petitioners" of the "proper suggested format"

10

for initiative questions, rather than "write the question" in a particular way, further supports the reading that § 906(6)(A) does not apply to the Secretary's final preparation of the ballot question.

A comparison between the language of § 906(6)(A) and § 906(6-A) is also instructive. 21-A M.R.S. § 906(6-A) (2021) provides the proper format for Legislature-initiated referenda:

> **6-A. Wording of referendum questions enacted by the Legislature.** The proper format for a statutory referendum enacted by the Legislature is a separate question for each issue. In determining whether there is more than one issue, each requiring a separate question, considerations include whether;
>
> > **A.** A voter would reasonably have different opinions on the different issues;
> >
> > **B.** Having more than one question would help voters to better understand the subject matter; and
> >
> > **C.** The Legislature determines the questions are severable and can be enacted or rejected separately without negating the intent of the Legislature.

The first sentence of § 906(6)(A) differs from the first sentence of § 906(6-A) in two important respects. First, § 906(6)(A) refers to the "proper suggested format" for an initiative question, instead of the "proper format" referred to in § 906(6-A). Second, § 906(6)(A) contains the phrase "The Secretary of State shall advise petitioners," which has no parallel in § 906(6-A). Also, § 906(6-A)(C) specifies that the Legislature is the entity determining whether questions are severable, whereas § 906(6)(A)(C) only states the "questions are severable" without vesting the authority to make this determination in any particular person or entity.

The differences between § 906(6)(A) and § 906(6-A) also support the interpretation that the "proper suggested format" is non-mandatory. The Legislature used exclusively mandatory language for the format of Legislature-initiated referenda, but used non-mandatory language for the format of direct initiatives. § 906(6)(A) states that the Secretary must "advise" petitioners of the "suggested" format for referendum questions. If this format was meant to be mandatory, the

11

Legislature would have more closely imitated the language in § 906(6-A) and written the "proper format." Also, the Legislature could have clarified further by writing § 906(6)(A)(C) as follows: "The Secretary of State determines the questions are severable and can be enacted or rejected separately without negating the intent of the petitioners." This would clearly state that it was incumbent on the Secretary to make the determination whether the ballot question should be split. Instead, the statute is silent as to who makes this determination in the context of a direct initiative. The differences between these statutory provisions indicate that the Legislature intended the format for Legislature-initiated referenda to be mandatory, but intended the format for direct initiatives to be "suggested," i.e., non-mandatory.

Petitioner argues that interpreting the statute to not require the Secretary to independently determine whether the initiative proposal must be split into separate questions when drafting the final language for ballot questions raises constitutional concerns. Specifically, petitioner argues that if the Secretary is not required to independently determine whether the ballot initiative requires multiple questions, this abdicates her constitutional authority to prepare the ballots for direct initiatives. *See* Me. Const. art. IV, pt. 3, § 20. The Maine Constitution provides that "the Secretary of State shall prepare the ballots in such form as to present the question or questions concisely and intelligibly." *Id.* There is nothing in this passage to suggest that the Secretary must apply the § 906(6)(A) factors to present the question "concisely" or "intelligibly." *Id.* Petitioner does not dispute that the Secretary drafted the ballot question in a concise and intelligible manner. Petitioner's constitutional arguments are unavailing.

The plain language of § 906(6)(A) supports the Secretary's position. § 906(6)(A) only requires the Secretary to advise initiative petitioners of Maine's preference for ballot initiatives

12

that have one issue per question and to notify them of the statutory factors guiding this determination.

## B. Legislative History

The statute is unambiguous, so an analysis of the legislative history is, strictly speaking, unnecessary. *See City of Bangor v. Penobscot Cnty.*, 2005 ME 35, ¶ 13, 901 A.2d 177. However, because this is a novel issue of statutory interpretation that concerns the constitutional power of the people of Maine to legislate by direct initiative, the court will conduct a brief analysis of the legislative history materials relevant to § 906(6)(A). *See* Me. Const. art. IV, pt. 3, § 20. Fortunately, these materials support the plain language of the statute.

§ 906(6)(A) was first enacted in 1993 as part of L.D. 1488, "An Act to Clarify the Process for a Direct Initiative of Legislation and to simplify Questions Presented to the Voters at a Referendum." *See* P.L. 1993, ch. 352, §§ 1-4. L.D. 1488 repealed an earlier version of 21-A M.R.S. § 906 which required the Secretary to phrase all initiative questions as follows: "Do you favor the changes in Maine law concerning (the subject matter of the law) proposed by citizen petition?" P.L. 1987, ch. 119. L.D. 1488 replaced the formulaic wording of initiative questions with more flexible standards now codified at 21-A M.R.S. §§ 906(6)(B)-(E).[3] L.D. 1488, § 3 (116th Legis. 1993).

The original version of L.D. 1488 included the provision now codified at § 906(6-A). L.D. 1488, § 4 (116th Legis.). § 906(6)(A) was subsequently added to L.D. 1488 by amendment. Comm. Amend. A to L.D. 1488, No. H-497 (116 Legis. 1993.) As noted above, § 906(6)(A) and § 906(6-A) are substantially similar, with a few exceptions. There are no legislative history

---

[3] Some of these provisions have been subsequently amended, but still exist in substantially similar form as they were enacted in 1993. *See* P.L. 2019, ch. 414, § 1. These amendments do not affect the court's analysis of the legislative history.

materials that explain why the drafters of § 906(6)(A) changed "proper format" to "proper suggested format" when they drafted § 906(6)(A), nor do any materials explain the intention behind the inclusion of the term "advise" in § 906(6)(A).

The fact that § 906(6)(A) was enacted at the same time as § 906(6-A) indicates, at least, that the Legislature knew how to direct a government entity to limit ballot questions to one issue per question. The fact that § 906(6)(A), which contains non-mandatory language, was drafted *after* § 906(6-A), which contains mandatory language, indicates that the use of non-mandatory language in § 906(6)(A) was intentional. Clearly, if the Legislature wished to direct the Secretary to split ballot questions by issue, instead of only advising petitioners of the suggested format for ballot questions, it knew how to do so. The fact that the Legislature did not choose to write § 906(6)(A) with mandatory language mirroring § 906(6-A) suggests that the Legislature did not intend § 906(6)(A) to impose a mandatory duty on the Secretary to split ballot questions if they contain multiple issues.

The legislative history of § 906(6)(A) supports its plain meaning. The Secretary does not have a mandatory duty pursuant to § 906(6)(A) to prepare ballot questions for direct initiatives with only one issue per question. Therefore, the Secretary did not err by preparing the question in its current form.

The entry is

The decision of the Secretary of State is hereby AFFIRMED.

The Clerk is directed to enter this order into the docket by reference pursuant to M.R.Civ.P. 79(a).

Date: 7/6 , 2020

John O'Neil
Justice, Superior Court

14